[Nos. 47687-0, 48239-0, 47932-1.  En Banc.  February 24, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN FREDERICK COUNTS, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. LARRY HOLMES, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. LENNIS MYLES BARILLEAUX, *Petitioner.*

56

*Richard A. Hansen* and *David Lancaster* of *Seattle–King County Public Defender Association,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Dennis R. Nollette, Senior Deputy,* for respondent.

STAFFORD, J.—In each of these consolidated cases, the petitioner asks this court to apply retroactively *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). *Payton* held that in the absence of exigent circumstances, police may not make a warrantless, nonconsensual

entry into a suspect's home to make a routine felony arrest. We deferred these cases pending resolution of the retroactivity issue by the Supreme Court in *United States v. Johnson*, 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982).

# I

In June of 1982, *Johnson* held *Payton* to be retroactive in all cases pending on direct appeal at the time *Payton* was decided. As with the consolidated cases before us, *Johnson* involved a situation in which the defendant was convicted in part on the basis of evidence gathered after a warrantless entry and arrest within the home. *Payton* was decided after Johnson's appeal had been denied by the Ninth Circuit. The Ninth Circuit then withdrew its opinion and reversed Johnson's conviction in light of the *Payton* rule. *United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980).

In *Johnson,* the Supreme Court adopted a new test for all decisions interpreting the Fourth Amendment which are not clearly controlled by past retroactivity precedent. After *Johnson,* Fourth Amendment decisions must be applied retroactively to all cases still pending on direct appeal at the time of the new decision. *Johnson,* at 554–56.

The State suggests that since *Johnson* arose entirely within the federal system, its precedent should be applicable only within that system. The State also asserts that while *Johnson* did not effectively alter any federal statute or Supreme Court precedent, if applied to this state, it would effectively overturn RCW 10.31.040 which authorizes warrantless arrests in the home. Although it is true *Johnson* would require a new interpretation of RCW 10.31.040, we are nevertheless bound by the Supreme Court. The State overlooks the fact that the Supreme Court has remanded several state cases for reconsideration in light of *Johnson. See, e.g., People v. Graham*, 76 A.D.2d 228, 431 N.Y.S.2d 209 (1980), *cert. granted*, ___ U.S. ___, 73 L. Ed. 2d 1362, 102 S. Ct. 3474 (1982); *Ford v. State*, 622 S.W.2d

915 (Ky. 1981), *cert. granted,* ___ U.S. ___, 73 L. Ed. 2d 1363, 102 S. Ct. 3476 (1982). Moreover, the decision in *Payton* cannot be called a clear break with past Washington law. *See, e.g., State v. Werth,* 18 Wn. App. 530, 571 P.2d 941 (1977). Clearly, the result in *Payton* was foreshadowed by decisions of our state courts. Thus, traditional principles of retroactivity are inappropriate here.[1]

*Johnson* affirmatively requires this court to apply the principles of *Payton* to all cases pending on appeal at the time that case was decided. The appeals in Counts, Holmes and Barilleaux all fall within that category; therefore, this court must determine in each case whether the warrantless entry and arrest was made as an exception to the *Payton* rule.

## II

█ In *Payton,* at page 576, the Supreme Court declared that in the absence of exigent circumstances, "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." But, the Court expressly avoided a determination of the "exigent circumstances" that would justify a warrantless entry. *Payton,* at 583. Moreover, neither *Payton* nor its companion case, *Riddick v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) presented a question of consent. *Payton,* at 583.

Since each of the three cases before us will turn on its own facts, we must consider the application of *Payton* to each case separately.

## A
### State v. Counts, No. 47687-0
Shortly after midnight on July 3, 1978, Bellevue police

---

[1]Under traditional retroactivity analysis, a decision which constitutes a complete break with past law will not usually be given retroactive effect. *Desist v. United States,* 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030 (1969); *see also Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *Brumley v. Charles R. Denney Juvenile Ctr.,* 77 Wn.2d 702, 466 P.2d 481 (1970).

responded to a silent alarm set off at a local golf course. Upon discovering the clubhouse had been burglarized, police searched the immediate vicinity. With the aid of a tracking dog, they discovered 15–year–old Rob Chatelaine crouched in some nearby bushes with candy and cigarettes taken from the clubhouse.

Chatelaine initially denied anyone else had been involved in the burglary. After being interrogated by police between 10 and 60 minutes, during which time the police asked him if one of the Counts brothers was involved, Chatelaine stated that Fred Counts had been with him. Following this admission, the police put the tracking dog on a scent which led them to Counts' house.

Counts' father refused the police permission to enter the home to arrest his son. An hour or more of bitter argument ensued during which Counts' father demanded that the police secure a warrant. The officer in charge decided, however, to proceed with an immediate arrest and ultimately entered the home without a warrant and without consent.

Fred Counts had become quite emotionally upset during this time. When the police entered the home, Fred ran into the kitchen, picked up a butcher knife and moved to within about 15 feet of the officers. The police immediately drew their guns, but Fred's father intervened and took the knife from his son. Fred was then arrested without incident.

Fifteen–year–old Counts was tried as an adult on charges of second degree burglary and second degree assault. A jury found him not guilty of the burglary (the charge under which the entry was made) but guilty of the assault (which occurred after the entry). After trial, but before oral argument to the Court of Appeals, the United States Supreme Court issued its decision in *Payton v. New York, supra.* The Court of Appeals refused to apply *Payton* retroactively and affirmed the assault conviction, noting that *Payton* would control if it were applicable. The Court of Appeals further noted that if the entry was unlawful, Counts would have been entitled to have submitted the issue of whether he had acted reasonably in defending against it. *State v.*

*Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952).

The Court of Appeals is reversed to the extent it relied on the nonretroactivity of *Payton.* The State nevertheless contends the warrantless entry and arrest of Counts in his home occurred under "exigent circumstances" which would place it outside the *Payton* rule.

Although the Supreme Court has not had an opportunity to determine what "exigent circumstances" would actually justify a departure from the *Payton* rule, several federal courts have addressed that issue. In *United States v. Kreimes,* 649 F.2d 1185, 1192 (5th Cir. 1981) the court catalogued five separate circumstances which could be termed "exigent"—(1) hot pursuit, *United States v. Santana,* 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976); (2) fleeing suspect, *United States v. Williams,* 612 F.2d 735 (3d Cir. 1979), *cert. denied,* 445 U.S. 934 (1980); (3) danger to arresting officer or to the public, *United States v. Moschetta,* 646 F.2d 955 (5th Cir. 1981); (4) mobility of the vehicle, *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); and (5) mobility or destruction of the evidence, *United States v. Eddy,* 660 F.2d 381 (8th Cir. 1981).

Here, the State maintains the officers were in "hot pursuit" at the time they entered Counts' home to make the arrest. We do not agree.

In *United States v. Santana, supra* at 43, the Court held that "hot pursuit" does mean "*some sort of a chase,* but it need not be an extended hue and cry 'in and about [the] public streets.'" (Italics ours.) In this case, the officers argued with petitioner's father for over an hour concerning the necessity of a warrant. The police indicated that because of the tracking dog, they did not need one. The police knew Counts was inside. He was not in flight. Clearly, this is not the kind of situation contemplated by the "hot pursuit" exception. The use of a tracking dog does not change the situation. The police easily could have maintained surveillance while waiting for a warrant. *See Johnson v. United States,* 333 U.S. 10, 92 L. Ed. 436, 68 S.

Ct. 367 (1948). Counts conceded the police had probable cause sufficient for a warrant. In short, the warrantless entry by the Bellevue police is precisely the kind of conduct prohibited by *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).

The decision of the Court of Appeals is reversed and the cause remanded to the trial court for a new trial which should include an instruction to the jury on a defendant's right to use reasonable resistance against an unlawful arrest. *See State v. Rousseau, supra.*

### B
### State v. Holmes, No. 48239-0

Late in the evening of January 13, 1980, two men picked up a 17–year–old female hitchhiker. They put her in the back seat, locked the doors and drove her around Seattle for about an hour. They then took her to a house where she was forced to remove her clothes, was beaten and raped by one of the men whom she later identified as petitioner, Larry Holmes. After spending the night injured and naked, she was raped by the other man, later identified as Ricky Horne, and then told she could leave.

The victim immediately went to a phone booth to report what had happened. Investigating officers took her to Harborview Medical Center. On the way, she gave officers a description of the two men who had raped her, a description of their car and a partial description of the house where the rape occurred. After an unsuccessful attempt to locate the house, Officer Houston returned to the hospital to pick up the victim and a social worker. With the victim's assistance, Houston located the house and returned her to the hospital.

Houston returned to the house, a bilevel duplex. He and two other officers went to the upper level and knocked on the door and windows for about 5 minutes. Unable to obtain a response, the officers entered through an unlocked door and found a couple in the first bedroom. Although police were first told no young man lived there, they

returned after learning from a neighbor that a young man did live in the upper duplex. The first couple then indicated that a young man was in the last bedroom. The police knocked on the bedroom door, Holmes opened it and came out after being told the house was surrounded. He was informed of his *Miranda* rights.

At this point it should be noted that both Holmes and the inside of the house fit the detailed descriptions given by the victim.

According to the officers, Holmes vigorously asserted he had not left the house and that his girlfriend had been with him all night. After further discussion, Holmes admitted Ricky Horne might have brought a girl back while Holmes was asleep. Holmes was arrested and charged with first degree rape.

The jury found Holmes guilty of the charge. He appealed contending the statements made at the time of his arrest should have been suppressed because the warrantless entry into his home violated the rule in *Payton v. New York, supra.* The Court of Appeals declined to apply *Payton* retroactively and also indicated the presence of exigent circumstances. The Court of Appeals alternatively held that admission of the statements was harmless error.

██ In arguing the existence of exigent circumstances, the State emphasizes the considerable time it would have taken to obtain a warrant and the likelihood that the evidence would not have remained undisturbed unless seized in the early morning hours. If the police reasonably fear destruction of evidence, a warrantless entry will be upheld. *United States v. Martino,* 664 F.2d 860 (2d Cir. 1981). There is no indication in this case, however, that the police had any cause to believe that the destruction of evidence was imminent. *See Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). Again, the police could have maintained surveillance while obtaining the requisite warrant. As the United States Court of Appeals stated in *United States v. Bulman,* 667 F.2d 1374, 1384 (11th Cir. 1982):

the exigent circumstances doctrine is applicable only within the narrow range of circumstances that present a real danger to the police or the public or a real danger that evidence . . . might be lost.

Although we find there were no exigent circumstances to justify the warrantless intrusion, we nevertheless find the admission of the statement given by Holmes at the time of his arrest was harmless error. The statements sought to be suppressed by Holmes were exculpatory in nature. Further, their admission could have had no significant impact on the outcome of the trial. The evidence presented by the State was more than sufficient to convict Holmes. Where there is overwhelming evidence to support the jury's verdict, as there was in this case, a constitutional error can be said to be harmless if it is so established beyond a reasonable doubt. *State v. Evans,* 96 Wn.2d 1, 5, 633 P.2d 83 (1981); *see also United States v. Bulman, supra.*

The decision of the Court of Appeals is reversed with respect to the issues of retroactivity and exigent circumstances. The decision is affirmed, however, in its result.

### C
### State v. Barilleaux, No. 47932–1

Upon receiving a tip that burglary suspect Lennis Barilleaux was about to leave the area, police officers went to his trailer home. The officers arrived about 10:45 p.m. Detective Duncan testified he was not in uniform, but that the officer who accompanied him was. Duncan knocked on the trailer door and after a while, petitioner's brother, Jeff, opened it. Detective Duncan asked where Lenny was. Upon being told he was asleep in the back bedroom, Duncan and other officers entered the trailer and proceeded down the hall with guns drawn. They awakened Lenny and arrested him without a warrant. Lenny then gave the police a statement.

Jeff testified at trial that the officers did not say who they were or what they wanted. He did not recall any one

of them being in uniform. He also testified he "didn't mean to let them in" and that he usually opened the door when someone was outside.

Barilleaux was charged with first degree theft and second degree burglary. The trial court denied his motion to suppress the confession, concluding that although there were no exigent circumstances, police did not need a warrant to arrest a suspect in his home. Barilleaux was found guilty by the trial court on stipulated facts. The Court of Appeals affirmed, reasoning that the *Payton* rule did not apply retroactively and that even if it did, the entry was by invitation and therefore consensual.

The State has the burden of establishing that consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968). We hold the mere opening of a door to see who is there is not the equivalent of freely consenting to entry by that person. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *United States v. Martino, supra*. As the United States Court of Appeals commented in *United States v. Reed*, 572 F.2d 412, 423 n.9 (2d Cir. 1978):

> We do not believe that the fact that Reed opened the door to her apartment in response to the knock of three armed federal agents operated in such a way as to eradicate her Fourth Amendment privacy interest. To hold otherwise would be to present occupants with an unfair dilemma, to say the least—either open the door and thereby forfeit cherished privacy interests or refuse to open the door and thereby run the risk of creating the appearance of an "exigency" sufficient to justify a forcible entry. This would hardly seem fair in situations that present no exigent circumstances in the first place.

(Citations omitted.) Where the trial court found the police failed to announce their purpose as required by RCW 10.31.040, it is inappropriate to hold that by opening the door, petitioner's brother consented to their entry. Moreover, there were no exigent circumstances to excuse the warrantless entry. Knowing that Barilleaux was inside, the

police had ample time to secure a warrant before entering. *See Johnson v. United States, supra.*

The decision of the Court of Appeals is reversed and the cause is remanded for a new trial consistent with this opinion.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and BEVER and CUNNINGHAM, JJ. Pro Tem., concur.

Reconsideration denied April 8, 1983.