[No. 33273-2-I. Division One. May 22, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAUDE HUMPHREY AUDLEY, *Appellant*.

*Mark B. Tackitt,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michele Ann Hauptman, Deputy,* for respondent.

AGID, J. — Claude Audley appeals his conviction for possession of cocaine with intent to deliver. He asserts that RCW 10.79.130, which authorizes warrantless strip searches of some arrestees, violates the right of privacy guaranteed by article 1, section 7 of the Washington State Constitution. We conclude that, in this context, the protection afforded by the state constitution is coextensive with that afforded by the fourth amendment to the United States Constitution. Under the Fourth Amendment, a warrantless strip search of an arrestee is constitutional if it is supported by reasonable suspicion that the arrestee is concealing contraband which

poses a threat to jail security. Because the officers in this case had a reasonable suspicion that Audley was concealing crack cocaine, we affirm.

## FACTS

On December 18, 1992, Officer Victor Maes of the Seattle Police Department was conducting surveillance in downtown Seattle as part of a narcotics operation. Maes observed a person, later identified as Audley, walk up to a man in a stocking cap. One of them pointed toward two women standing nearby, and both men walked over to the women. All four people then walked to a bus shelter. In the shelter, Audley reached down the front of his pants and pulled out an object. Audley handed the object to someone in the bus shelter, then reached toward the front of his pants again.

The men left the bus shelter and separated. Audley stopped, reached down the front of his pants, pulled out a clear plastic baggie, and took out several pieces of what Maes suspected was rock cocaine. He chose one, returned the others to the baggie, and walked back toward the man with the stocking cap. Audley placed the rock on a nearby pay phone and motioned toward it. The man with the stocking cap went over, picked it up, placed it in his mouth, and crossed the street.

Maes had an arrest team stop Audley because he suspected Audley had been delivering rock cocaine. He asked the arresting officers to check the front of Audley's pants for drugs. Audley was arrested, taken to the police station and placed in a holding cell. The arresting officers obtained written permission to perform a strip search pursuant to RCW 10.79.130. The search uncovered a plastic baggie containing 42 rocks of cocaine under Audley's genitals.

## DISCUSSION

■ As a threshold matter, Audley contends that the Legislature may not enact a law creating an exception to the warrant requirement because, in so doing, it is violating the separation of powers doctrine. While it is ultimately the province of the court to determine whether government action is constitutional, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.

Ed. 60 (1803), it does not follow, as Audley argues, that other branches of government are thereby prohibited from taking actions affecting federal or state constitutional rights. The Legislature exercises its police power to protect the public health, safety, morals or welfare by enacting laws, which are presumed constitutional. *In re Aubrey*, 36 Wash. 308, 314-15, 78 P. 900 (1904); *State v. Hernandez-Mercado*, 124 Wn.2d 368, 380, 879 P.2d 283 (1994). The courts will invalidate such legislative enactments only if they exceed the limitations placed on the Legislature's exercise of its police power by the federal or state constitutions. *Aubrey*, 36 Wash. at 315; *Remington Arms Co. v. Skaggs*, 55 Wn.2d 1, 5-6, 345 P.2d 1085 (1959). The Legislature, therefore, has authority to *enact* legislation permitting warrantless strip searches. The question the court must resolve is whether it has exceeded constitutional boundaries in doing so.

RCW 10.79.130, the statute authorizing warrantless strip searches of arrestees, provides:

(1) No person to whom this section is made applicable by RCW 10.79.120[1] may be strip searched without a warrant unless:

(a) There is a reasonable suspicion to believe that a strip search is necessary to discover weapons, criminal evidence, contraband, or other thing concealed on the body of the person to be searched, that constitutes a threat to the security of a holding, detention, or local correctional facility;

(b) There is probable cause to believe that a strip search is necessary to discover other criminal evidence concealed on the body of the person to be searched, but not constituting a threat to facility security; or

(c) There is a reasonable suspicion to believe that a strip search is necessary to discover a health condition requiring immediate medical attention.

(2) For the purposes of subsection (1) of this section, a reasonable suspicion is deemed to be present when the person to be strip searched has been arrested for:

(a) A violent offense as defined in RCW 9.94A.030 or any successor statute;

---

[1]RCW 10.79.120 provides that RCW 10.79.130-.160 "apply to any person in custody at a holding, detention, or local correctional facility, other than a person committed to incarceration by order of a court". Thus, the statute applies only to arrestees, it does not apply to persons who are in detention pursuant to a court order.

(b) An offense involving escape, burglary, or the use of a deadly weapon; or

(c) An offense involving possession of a drug or controlled substance under chapter 69.41, 69.50, or 69.52 RCW or any successor statute.

The statute permits warrantless strip searches of arrestees in four situations. First, under RCW 10.79.130(1)(a), a person may be strip searched where there is a reasonable suspicion to believe that a strip search is necessary to discover weapons, criminal evidence, contraband, or other things that constitute a threat to the security of the facility. Searches pursuant to this section must be supported by individualized, reasonable suspicion that the person searched is concealing one of the items listed.

Second, under RCW 10.79.130(2), a person arrested for a violent offense, an offense involving escape, burglary or use of a deadly weapon or a drug related offense may be strip searched solely on the basis of the nature of the crime for which he or she is arrested. Under this section, reasonable suspicion to believe that a strip search is necessary to discover contraband that constitutes a threat to the security of a facility is automatically deemed present where one of the enumerated crimes is involved. Unlike RCW 10.79.130(1)(a), RCW 10.79.130(2) contains no requirement that the suspicion be individualized.

Third, RCW 10.79.130(1)(b) authorizes a strip search where there is probable cause to believe that it is necessary to discover criminal evidence that does not constitute a threat to the security of the facility. In contrast to RCW 10.79.130(1)(a), RCW 10.79.130(1)(b) requires a higher level of suspicion, probable cause, to conduct a strip search.[2]

Fourth, RCW 10.79.130(1)(c) authorizes a strip search where there is a reasonable suspicion to believe that it is necessary to discover a health condition requiring immediate medical attention.

---

[2]See State v. Harris, 66 Wn. App. 636, 643, 833 P.2d 402 (1992) (noting that although "reasonable suspicion" is not defined in the statute, it is clear from the statutory framework that it is a lesser standard than probable cause).

██ Audley contends that this statute is unconstitutional under Const. art. 1, § 7[3] of the state constitution. A statute violates Const. art. 1, § 7 if it permits state action which unreasonably intrudes into a person's private affairs. *State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990). The starting point for determining whether our constitution should be interpreted more broadly than the federal constitution in a given context is an analysis of the *Gunwall* factors. The following criteria are relevant to this determination: (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986). In other Const. art. 1, § 7 challenges, the Supreme Court has simply adopted the *Gunwall* court's analysis of the first, second, third and fifth factors because they do not vary from case to case. *State v. Goucher*, 124 Wn.2d 778, 783, 881 P.2d 210 (1994); *Boland*, 115 Wn.2d at 576. Thus, we focus only on the fourth and sixth factors, which vary depending on the state action being challenged.

 The sixth *Gunwall* factor examines whether the issue is one of state or local concern. This factor is relevant because our courts are willing to sacrifice national uniformity for greater protection for our citizens where significant privacy concerns are at stake. Strip searches unquestionably implicate significant privacy concerns because they involve a considerable intrusion into a person's privacy. *See State v. Sweeney*, 56 Wn. App. 42, 49, 782 P.2d 562 (1989) (stating that the court could not "conceive of anything more intrusive to a person's right to privacy than a strip search"); *see also Justice v. Peachtree City*, 961 F.2d 188, 192 (11th Cir. 1992) (it "is axiomatic that a strip search represents a serious intrusion upon personal rights"). In addition, the statute regulates strip searches only at local detention facilities.[4]

---

[3]Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

[4]See footnote 1, *supra*.

Neither the privacy interest involved nor the State's interest in the security of local jails implicates a subject matter for which national uniformity is necessary. The authority to conduct warrantless strip searches of arrestees, therefore, is a matter that is particularly local in character, and the sixth *Gunwall* factor is met.

The determinative *Gunwall* factor in this case is the fourth, preexisting state law. This factor focuses on the level of protection this state has historically accorded the privacy interests urged by the Appellant. *Gunwall*, 106 Wn.2d at 61-62. Washington courts have consistently held that Const. art. 1, § 7 may provide greater protection against warrantless searches and seizures than the Fourth Amendment.[5] For the reasons set forth below, we conclude that our constitution affords no greater protection to an arrestee from warrantless bodily searches than the federal constitution. The fourth *Gunwall* factor therefore is not met and we will interpret Const. art. 1, § 7 coextensively with the Fourth Amendment in this context.

There is no preexisting law entirely on point to guide our analysis of the fourth *Gunwall* factor. However, our Supreme Court considered the constitutionality of somewhat analogous searches under the state constitution in *State v. Curran*, 116 Wn.2d 174, 804 P.2d 558 (1991). There, the court considered a statute permitting the warrantless, nonconsensual extraction of blood from persons arrested for driving under the influence of intoxicants. *See* former RCW 46.20.308(1). The search in *Curran* is analogous to the one here because it involved a warrantless search that constituted a significant intrusion into an arrestee's privacy interests. The *Curran* court held the statute constitutional under Const. art. 1, § 7, on the ground that it was a reasonable test conducted in a reasonable manner and that the officers had "clear indication" that the test would reveal the suspect's level of intoxication. 116 Wn.2d at 184; *see also State v. Komoto*, 40 Wn. App.

---

[5]*See, e.g., Boland*, 115 Wn.2d at 571 (protectable privacy interest under state constitution in garbage set out in a curbside garbage can); *Gunwall*, 106 Wn.2d at 54 (protectable privacy right in telephone records).

200, 697 P.2d 1025, *review denied*, 104 Wn.2d 1009, *cert. denied*, 474 U.S. at 1021 (1985). In reaching this conclusion, the court relied primarily on federal case law in its analysis of the state constitutional issue. Although a strip search is a greater intrusion than a blood test, we conclude that, under the *Curran* rationale, Const. art. 1, § 7 should be interpreted coextensively with the Fourth Amendment in this context.

Although we apply the federal standard here, we reject the State's position that the reasonableness of warrantless strip searches of arrestees can be resolved simply by reference to either the exigent circumstances or search incident to arrest exceptions to the warrant requirement. These exceptions to the warrant requirement do not apply here for a number of reasons. First, and most obvious, the strip search statute authorizes a significant intrusion into a person's privacy interest in his or her body that goes far beyond the scope of an officer's authority to conduct a warrantless search pursuant to arrest or exigent circumstances.[6] Second, warrantless strip searches of arrestees are justified on a different basis from searches permitted in exigent circumstances or incident to arrest. Strip searches of arrestees, therefore, do not fall within the ambit of either exception to the warrant requirement.

Exigent circumstances exist where it is impractical to obtain a warrant. *State v. Muir*, 67 Wn. App. 149, 152, 835 P.2d 1049 (1992). Such circumstances include hot pursuit, fleeing suspects, safety of the arresting officer or the public, mobility of a vehicle, and mobility or destruction of evidence. *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). Although safety and destruction of evidence are concerns present where a person is introduced into a detention facility, these are not the dispositive factors in determining exigency. The focus of this exception is the impracticality of obtaining a warrant. Once a person is securely in custody, the temporal constraints or impracticality of obtaining a warrant will have greatly dissipated.

---

[6]We recognize that additional facts peculiar to an arrest might justify such a search if, for example, an arrestee were concealing a weapon in his or her underwear. However, an arrest by itself would not justify such an intrusion.

The difference between the circumstances that justify searches outside a jail and those that justify a strip search under the statute is apparent from the statute itself. Some of the searches authorized by the statute require either approval of the jail unit supervisor or a judicial warrant. For example, under RCW 10.79.140(2), written permission is required to conduct a strip search where reasonable suspicion is not deemed automatically present under RCW 10.79.130(2). Similarly, a person may not be subjected to a body cavity search without a warrant. *See* RCW 10.79.080. The fact that prior approval, which necessarily involves some delay in the process, is required in some instances under the statute undercuts the State's argument that the underlying justification for allowing these types of searches is the exigency of the situation.

Similarly, as we noted above, a strip search of an arrestee cannot be justified under the search incident to arrest exception to the warrant requirement alone.[7] We have found only one case in this jurisdiction, *State v. Colin*, 61 Wn. App. 111, 809 P.2d 228, *review denied*, 117 Wn.2d 1009 (1991), permitting a strip search incident to arrest. However, that strip search was conducted pursuant to a warrant. Thus, the question was whether the police had exceeded the scope of the warrant in conducting the search. The *Colin* court discussed the strip search statute, and correctly concluded that it was not applicable because the search did not take place in a detention facility.[8] *Colin* does not stand for the proposition that a *warrantless* search incident to arrest alone can extend to a strip search. Furthermore, the Legislature has specifi-

---

[7]*See Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984), *cert. denied*, 471 U.S. 1053 (1985). In *Giles*, the court rejected the argument that a warrantless strip search of a person booked into a county jail could be justified as a lawful search incident to arrest. The court noted that although *United States v. Robinson*, 414 U.S. 218, 235, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) held that a " 'full search of the person' incident to arrest is per se reasonable under the fourth amendment[,] . . . nothing in the opinion implies that the court intended 'full search' to include such intrusions" as strip searches or bodily intrusions. 746 F.2d at 616. We agree with the *Giles* court that intrusions into an arrestee's body are not authorized by arrest alone.

[8]*See also Harris*, 66 Wn. App. at 643 n.3.

cally provided that the strip search statute shall not be construed to either contract or expand an officer's authority to conduct a warrantless search of a person incident to arrest.[9] Thus, the Legislature has clearly indicated that the authority of law required by our constitution to conduct such a search must be found elsewhere.

A meaningful analysis of the reasonableness of a warrantless search or seizure involves more than simply attempting to fit a given situation into an exception to the warrant requirement. Rather, the underlying rationale of the exceptions should guide the analysis. The rationale underlying the exigent circumstances exception is to permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence. The rationale underlying the search incident to arrest exception is to protect officer safety and prevent the destruction of evidence. The main rationale of the warrantless search here, at least with respect to the sections we consider, is to protect institutional security by preventing the introduction of contraband that poses a threat to that security. This is the overriding concern of the statute, and the reasonableness of permitting warrantless strip searches of arrestees must be judged in light of it.

Federal courts apply a balancing test in assessing the constitutionality of warrantless strip searches of arrestees in local detention facilities. Such searches are reasonable under the Fourth Amendment where the security needs of the local jail outweigh the privacy interests of the arrestees subject to strip searches. *See Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir. 1984), *cert. denied*, 471 U.S. 1053 (1985). Blanket policies permitting strip searches of all arrestees booked into detention facilities have uniformly been held unconstitu-

---

[9]*See* RCW 10.79.100(6) (providing that "RCW 10.79.080 and this section shall not be interpreted as expanding or diminishing the authority of a law enforcement officer with respect to searches incident to arrest or investigatory stop in public").

tional by the federal circuit courts under this test. *See Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993), and cases cited therein. Thus, to comport with the Fourth Amendment, warrantless strip searches must, at a minimum, be based on individualized, reasonable suspicion that the arrestee is concealing contraband. Reasonable suspicion to conduct a strip search may be based on factors such as the nature of the offense for which a suspect is arrested and his or her conduct. *Giles*, 746 F.2d at 617.[10]

Applying these guidelines to the case at hand, we hold that RCW 10.79.130(1)(a), the section of the statute relied on by the trial court, is constitutional under Const. art. 1, § 7 and the Fourth Amendment. Such searches are permissible where they are supported by reasonable suspicion that an arrestee is concealing contraband that poses a threat to jail security. Such suspicion was clearly present here. The crime for which Audley was arrested, possession of a controlled substance with intent to deliver, and his conduct prior to arrest[11] were sufficient to establish reasonable suspicion that he might have been carrying or concealing criminal evidence or contraband that would be uncovered during a strip search.

Audley concedes that drugs, weapons, or other contraband pose a potential threat to facility security. However, he contends that these items can be a threat only before they are introduced to the facility. A strip search designed to prevent bringing these items into a facility must, he argues, be conducted before an arrestee is placed in a holding cell where that person can retrieve concealed contraband and either use it or give to another person in the cell. Thus, he concludes that a strip search conducted after an arrestee has been placed in a holding cell, which is what occurred in this

---

[10]*See also* RCW 10.79.140(1) (where reasonable suspicion is not deemed present under RCW 10.79.130(2), it must be individualized and the nature of the offense may be considered in making this determination).

[11]Audley reached down the front of his pants at least twice while he was under surveillance and retrieved what Maes suspected was rock cocaine. Maes also testified that the crotch area is a common place for dealers to hide drugs.

case, does not protect facility security and contravenes RCW 10.79.130(1)(a).

We do not agree with his assertion that RCW 10.79.130(1)(a) limits warrantless strip searches to the time before a person is placed in a holding cell. Audley provides no factual support for his contention that contraband ceases to pose a security threat after an arrestee is placed in a holding cell. Nor does he point to any language in the statute or any constitutional limitation which supports his argument that we should limit strip searches to a specific time in the arrest and booking process.

Finally, Audley contends that the search did not comply with the requirements of RCW 10.79.130(1)(b), which authorizes warrantless strip searches if there is probable cause to believe that an arrestee is concealing evidence that does not constitute a security threat. Because Audley has conceded that controlled substances in a detention facility *are* a security threat, this argument lacks merit.

The conviction is affirmed.

BAKER, C.J., and COLEMAN, J., concur.