IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71161-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SENAI DENNIS HANKERSON, | ) | |
| | ) | |
| Appellant. | ) | FILED:  June 22, 2015 |

SCHINDLER, J. — A jury convicted Senai Dennis Hankerson of possession of a

stolen 2007 Range Rover, possession of a stolen 1992 Honda Accord, attempting to

elude a pursuing police vehicle, and taking a 2007 Lexus without permission in the first

degree.  Hankerson claims (1) the court erred in denying his motion to suppress

evidence obtained as a result of the warrantless entry into a garage and the fingerprints

found in the 2007 Range Rover, (2) the court abused its discretion by admitting a patrol

car dashboard video of his arrest, and (3) insufficient evidence supports the conviction

for attempting to elude a pursing police vehicle.  We affirm the convictions for

possession of a stolen vehicle and taking a motor vehicle without permission in the first

degree.  We reverse the conviction for attempting to elude a pursuing police vehicle and

remand for entry of an order of dismissal and resentencing.

FACTS

Possession of Stolen 2007 Range Rover

On Saturday, July 2, 2011 at approximately 11:55 a.m., Seattle Police Department Officer Brian Hanson noticed a "very new" gray 2007 Range Rover backed into a parking space in the "far corner" of a church parking lot in north Seattle. The Range Rover did not have a front license plate. Officer Hanson was "immediately suspicious." The church parking lot was usually empty on Saturdays and "is known as a lot where . . . stolen vehicles do get dumped." Officer Hanson parked his marked patrol car about 50 to 75 feet away from the Range Rover, "facing straight at the vehicle." Officer Hanson saw two men in the front seat. Officer Hanson made eye contact with a black male, later identified as Senai Dennis Hankerson, sitting in the driver's seat.

As Hankerson drove the Range Rover out of the parking lot, Officer Hanson noticed the back license plate was also missing. The tinted windows were too dark to see whether the vehicle had a temporary license plate. Officer Hanson turned on his emergency lights and siren. Hankerson did not stop, but instead drove the wrong way down a one-way residential street.

Officer Hanson followed Seattle Police Department policy and turned off his emergency lights and siren, but continued to follow the Range Rover onto Interstate 5. Hankerson attempted to evade Officer Hanson by making "a lot of rapid lane changes without signaling." Officer Hanson followed the Range Rover across the Ship Canal Bridge, onto State Route 520, across Lake Washington, and then southbound on Interstate 405 (I-405). When he reached I-405, Hankerson was driving over 70 m.p.h.

2

Officer Hanson asked dispatch to contact the Washington State Patrol (WSP) to "take over" the pursuit.

WSP Trooper Brandon Villanti saw the Range Rover get off the freeway and drive through the stop sign at the top of the exit ramp without slowing down. Trooper Villanti turned on his patrol car lights and siren to stop the car. Hankerson did not stop. Hankerson drove northbound on Lake Washington Boulevard, travelling at approximately 60 m.p.h. in a 25 m.p.h. zone. Trooper Villanti lost sight of the vehicle after it entered a park at the end of Lake Washington Boulevard. Several bicyclists and pedestrians saw the Range Rover enter the park and drive down a paved bike trail. Trooper Villanti said a chain link gate was "busted open and there were tire tracks in the dirt," as though "something had plowed through the gate."

Approximately 10 to 15 minutes later, Trooper David Bennett found the Range Rover parked on a cul-de-sac in a residential area. The vehicle was locked and looked as though it had "sustained some front end damage." After Trooper Bennett was unable to locate the driver or passenger, he called a tow truck and impounded the Range Rover.

Possession of Stolen 1992 Honda Accord and Attempting to Elude

On July 10, 2011 at 4:05 a.m., Seattle Police Department Officer Molly Clark saw a 1992 Honda Accord "coming down off of Aurora [Avenue] on Waverly Place." Officer Clark said the Honda "darted" up Waverly Place heading north and "didn't stop at the stop sign, didn't signal." The vehicle "did a U-turn on Aurora[,] ran through the cones illegally[,] and went back southbound on Aurora." Officer Clark followed the Honda southbound on Aurora Avenue. Officer Clark could see the driver was male and there

3

was a female passenger in the car. As Officer Clark "pulled up along the left side to look at the driver," the Honda "immediately cut over" and drove off Aurora Avenue onto a side street near Queen Anne.

Officer Clark followed the car. After the Honda went "through the red light" at Fifth Avenue and Broad Street, Officer Clark activated her emergency lights to pull the car over. The Honda accelerated and drove through a stop sign without stopping. Because the driver of the car was driving so "recklessly," Officer Clark turned off her emergency lights and ended the pursuit after getting the license plate number.

Taking 2007 Lexus without Permission in the First Degree

Carl Urbick works at a used car dealership in Georgetown that specializes in luxury cars, Auto Quest. On the afternoon of July 10, 2011, Urbick went on a test drive of a 2007 Lexus with a couple. After the test drive, the couple told Urbick they wanted to purchase the Lexus. Urbick went inside to start the paperwork. The couple left the keys inside the car and followed Urbick. When Urbick went back outside to record the mileage, the Lexus was gone.

Approximately 15 to 20 minutes later at approximately 5:00 p.m., the owner of Auto Quest, Craig Ludy, called 911 to report the theft. Seattle police officers responded within 15 minutes. Ludy signed a consent form to search and impound the Lexus.

At 5:56 p.m., officers activated the anti-theft tracking device on the stolen Lexus. The police followed the signal from the tracking device to 15th Avenue South and South Bayview Street on Beacon Hill. The Lexus was parked in a driveway in front of a detached single-car garage.

4

At 6:21 p.m., approximately 15 minutes after arriving at the scene, several officers entered the garage. Hankerson and a blond woman, later identified as Michelle Lee Antioquia, were "huddled up together" on a mattress in the back of the garage. Officer Sidney Brathwait and Officer Domingo Ortiz arrested Hankerson and Antioquia. A neighbor across the street identified Hankerson as the person he saw drive up in the Lexus a few minutes before the police arrived. After Hankerson and Antioquia were in custody, Officer Jarrod Stone, Officer Brandon Caille, and Officer Ortiz searched the garage and found a car key under the mattress. The officers used the key to open the Lexus and seize Hankerson's cell phone.

Later that evening, Officer David Bauer found a 1992 Honda Accord without front or back license plates parked a block from Auto Quest. The Honda had been reported stolen.

On July 15, Auto Quest owner Ludy discovered a 2007 Range Rover was missing from the lot. Ludy identified the 2007 Range Rover Trooper Bennett impounded on July 2 as belonging to Auto Quest, and gave his consent for the police to search the vehicle.

Information

The State charged Hankerson with theft of the 2007 Lexus and possession of the stolen 1992 Honda Accord on July 10, 2011, and possession of another stolen vehicle on May 10, 2011. The State charged Antioquia with taking the 2007 Lexus without permission in the second degree and with taking the 1992 Honda Accord without permission in the second degree. Antioquia pleaded guilty to one count of taking a motor vehicle without permission and agreed to testify against Hankerson.

Amended Information

After determining Hankerson's fingerprints matched the fingerprints found inside the 1992 Honda Accord and the 2007 Range Rover, the State filed an amended information. The State charged Hankerson with possession of the stolen 2007 Range Rover on July 2, 2011, Count I; possession of the stolen 1992 Honda Accord on July 10, 2011, Count II; attempting to elude a pursuing police vehicle on July 10, 2011, Count III; possession of the stolen 2007 Lexus on July 10, 2011, Count IV; taking the 2007 Lexus without permission in the first degree on July 10, 2011, Count V; possession of a stolen 2000 Honda Civic on August 18, 2011, Count VI; hit and run of an attended vehicle on August 18, 2011, Count VII; and vehicle prowl in the second degree committed between July 29, 2011 and August 2, 2011, Count VIII. The court granted Hankerson's motion to sever Counts VI, VII, and VIII for trial.

Motion To Suppress

Hankerson filed a motion to suppress the fingerprints found in the Range Rover and the evidence obtained as a result of the warrantless entry into the garage, including the key to the Lexus and the cell phone. Officer Hanson, Trooper Bennett, Officer Stone, Officer Walter, and Auto Quest owner Ludy testified at the CrR 3.6 hearing. The State also introduced into evidence a patrol car dashboard camera video.

Officer Hanson testified he was suspicious the Range Rover was stolen when he saw it in the church parking lot on July 2. Officer Hanson said the Range Rover did not have a front license plate. Officer Hanson testified Hankerson and the passenger were watching him and "seemed nervous." Officer Hanson said that when he activated his lights and siren, Hankerson "took off [the] wrong way down the one-way street." Officer

6

Hanson said the Range Rover did not have a back license plate. Officer Hanson followed the Range Rover until the WSP took over.

Trooper Bennett testified that a trooper reported seeing the Range Rover exit I-405 and believed it had gone into a park and driven down a bike path. Trooper Bennett said a gate near the bike path was "wide open" and he found the Range Rover on a residential street near the bike path. Trooper Bennett testified the Range Rover had no license plates and the temporary tag in the window "came back for a different vehicle." Trooper Bennett testified the Range Rover had sustained some "front end damage." Trooper Bennett impounded the car.

Officer Stone testified he located the 2007 Lexus the evening of July 10 at a home on Beacon Hill approximately 30 minutes after Auto Quest owner Ludy reported the Lexus stolen. Officer Stone testified he, Officer Brathwait, and Officer Ortiz interviewed two individuals who were sitting in a car parked in the driveway next to the Lexus "to find out what they knew or what their involvement may have been." Officer Stone testified they told him "the Lexus had just pulled up" and "a black male in his thirties and white female in her thirties with blond hair just jumped out of the vehicle" and went into the garage. Officer Stone testified Officer Caille also "talked to several witnesses across the street [who] said a black man and white woman with blond hair jump[ed] out of the vehicle."

Officer Stone testified that after taking Hankerson and Antioquia into custody, he went back into the garage with Officer Caille and Officer Ortiz and "just did a quick walk around to make sure . . . there's no weapons anywhere." Officer Stone testified he saw

7

a yellow key tag sticking out from under the mattress inside the garage, pulled it out, and found the Lexus key attached.

Officer Walter testified he and Officer Caille spoke to the two people sitting in the car parked next to the Lexus and "they saw two individuals get out of the Lexus and leave the area." Officer Walter testified the two individuals described the suspects as a "[b]lack male and white female." Officer Walter testified Officer Caille found a cell phone and cell phone charger in the Lexus along with some other items. Officer Walter testified that Hankerson confirmed the cell phone belonged to him.

Officer Stone arrived at 6:06 p.m. and parked his patrol car so that the dashboard camera faced the garage. The patrol car dashboard video shows two officers talking to one of the individuals who was sitting in the car parked in the driveway next to the Lexus.

Multiple officers then mill around the driveway in front of the garage and examine the Lexus. The officers do not have their weapons drawn and do not appear rushed. At 6:21 p.m., the officers walk up to the garage. An officer pulls open the door and two other officers enter the garage with their weapons drawn. Hankerson walks out a few seconds later followed by Antioquia.

The court ruled the initial entry into the garage and the arrest of Hankerson was lawful because "the [officers] didn't know what, if anything, that person would do and they had a basis to believe the defendant was in the garage." But the court granted the motion to suppress the Lexus key found sticking out from under the mattress in the garage and the cell phone and cell phone charger seized from the Lexus after Hankerson and Antioquia were in custody. The court denied the motion to suppress the

fingerprints found in the Range Rover. Assuming that Hankerson had standing to challenge the seizure of the Range Rover, the court ruled that the vehicle was lawfully impounded and the search of the Range Rover was based on the owner's consent.

Jury Trial

More than 15 witnesses testified during the six-day jury trial, including Officer Hanson, Trooper Bennett, Officer Clark, Officer Brathwait, Officer Caille, Officer Walter, Officer Stone, and Antioquia.

Officer Hanson identified Hankerson as the driver of the 2007 Range Rover that he followed on July 2. Seattle Police Department Latent Print Examiner Aleah Cole testified that Hankerson's fingerprints matched fingerprints found on the dashboard and on the temporary license plate inside the stolen Range Rover.

Seattle Police Department Latent Print Examiner Kristi Riccobuono testified that Hankerson's fingerprints matched the fingerprints found on the interior handle on the driver's-side door in the stolen 1992 Honda Accord.

Officer Caille testified that the 2007 Lexus did not have a front license plate but there was a license plate "loosely attached" to the back of the vehicle. The State presented evidence that the number on the license plate attached to the Lexus was the same license plate number on the 1992 Honda Accord Officer Clark attempted to stop the morning of July 10. Detective Manuel Quinonenz testified individuals often "switch[ ] plates to conceal the identity of a stolen car."

Auto Quest employee Louis Imhoff testified he saw Hankerson "walk[ing] around the dealership . . . outside on Nebraska Street." But Imhoff said he did not see Hankerson on July 10.

Without objection, the neighbor who lived across the street from the garage identified Hankerson as the person he saw drive up to the garage in an older white Honda on July 10. The neighbor said Hankerson drove away in the Honda a short while later. The neighbor testified that when he heard police sirens approximately 30 minutes later, he looked out his window, saw a silver Lexus pull up to the garage, and watched Hankerson and Antioquia get out of the Lexus and go into the garage.

Antioquia testified that she met Hankerson in July 2011 when he offered her a ride after midnight in an "older" white Honda. Antioquia said she had been drinking and possibly using "[c]rack cocaine." Antioquia thought she recognized Hankerson and accepted the ride. Antioquia testified Hankerson drove on Aurora Avenue heading south toward downtown Seattle. At some point, she heard a police siren and saw lights from a police car. Antioquia testified that when Hankerson saw the police car, he "started driving really, really fast[,] really crazy," driving on the sidewalk and in the wrong lane.

> [H]e was driving on the sidewalk, and he was driving in the wrong lanes,
> he was switching through traffic crazy. I mean, we could have hit anything
> at any point an[d] killed us both or wrecked the car. I mean, it was —
> when you're scared — I mean, I was scared, obviously, too, you know, he
> didn't want to get pulled over, so he's driving really, really, really crazy.

Antioquia testified Hankerson told her "not to freak out" because there was a "no chase law in the Seattle city limits" and the police "can only chase you [for] three to five minutes or else it's a danger to the public." Antioquia testified Hankerson seemed "really tense" and "nervous" but eventually "shook the police car."

Antioquia said they drove to a garage later that same day, "[w]ent inside, had a beer, got high and left." Antioquia testified Hankerson then drove to "some dealership"

and parked in an alley around the corner. Antioquia said Hankerson got out of the car and returned two or three minutes later driving a Lexus. Hankerson parked the Lexus behind the Honda. Antioquia testified Hankerson took the license plate off the Honda and put it on the back of the Lexus. Hankerson drove the Lexus back to the garage. Antioquia heard police sirens about five minutes after they arrived at the garage. Antioquia testified Hankerson told her to "lay down and act like we're sleeping."

On cross-examination, Antioquia acknowledged that she received a reduced sentence in exchange for testifying against Hankerson. Antioquia testified she did not tell the police everything right away because she "really didn't want to get involved in this situation. . . . I didn't help him steal the cars." Antioquia admitted to initially lying to the police about using drugs because she "really didn't want to say I was out getting high." Antioquia also admitted she lied when she told the police she did not know whether the Lexus was stolen. Antioquia testified that her memory of the day was "a little bit off and on, here and there."

The defense called Dr. Geoffrey Loftus as an expert on human memory and eyewitness identification. Dr. Loftus testified that people can have "very confident memories of things that are simply false." Dr. Loftus also testified that numerous experiments demonstrate people "are less able to recognize and identify members of other races compared to members of their own race." Hankerson did not testify.

In closing, defense counsel argued there was no evidence Hankerson was driving the 1992 Honda Accord Officer Clark attempted to pull over on July 10, 2011 and there was no evidence Hankerson stole the 2007 Range Rover or the 2007 Lexus. Defense counsel argued the fact that the police found Hankerson "sleeping in the

garage" near the stolen Lexus did not prove that Hankerson "did anything illegal." The defense argued that even if the neighbor saw Hankerson driving the stolen Lexus, the testimony did not establish Hankerson knew the car was stolen. The defense attorney argued Antioquia was not a reliable witness because she admitted lying to the police and was only testifying to avoid additional jail time.

The jury found Hankerson guilty on the charges of possession of the stolen 2007 Range Rover, possession of the stolen 1992 Honda Accord, attempting to elude, and taking the 2007 Lexus without permission. Following the jury trial, Hankerson pleaded guilty to possession of a stolen 2000 Honda Civic on August 18, 2011, Count VI, and the State agreed to dismiss hit and run of an attended vehicle and vehicle prowl in the second degree, Count VII and Count VIII. Before sentencing, the State conceded the jury conviction for possession of the stolen 2007 Lexus on July 10, 2011 was based on the same criminal conduct as the conviction for taking the Lexus without permission in the first degree. The court agreed and vacated the conviction for possession of the stolen 2007 Lexus. The court sentenced Hankerson to a standard range sentence of 43 months for possession of the 2007 Range Rover, 43 months for possession of the 1992 Honda Accord, and 22 months for attempting to elude a pursuing police vehicle to run concurrently. The court imposed a concurrent prison-based drug offender sentencing alternative of 42 months for taking the 2007 Lexus without permission in the first degree.

ANALYSIS

Hankerson contends the court erred in denying his motion to suppress because the warrantless entry into the garage and the warrantless seizure of the 2007 Range

12

Rover violated his constitutional rights under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution.

We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Unchallenged findings of fact are verities on appeal. O'Neill, 148 Wn.2d at 571. We review conclusions of law de novo. State v. Johnson, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).[1]

Warrantless Entry into Garage

A warrantless search violates article 1, section 7 unless it falls under one of " 'a few jealously guarded exceptions,' " including exigent circumstance. State v. MacDicken, 179 Wn.2d 936, 940-41, 319 P.3d 31 (2014) (quoting State v. Afana, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010)). The State bears the burden of establishing an exception to the warrant requirement. State v. Ladson, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999).

---

[1] Hankerson also challenges the delayed entry of the CrR 3.6 findings of fact and conclusions of law. Late entry of CrR 3.6 findings and conclusions does not require reversal unless it prejudices the defendant. State v. Byrd, 83 Wn. App. 509, 512, 922 P.2d 168 (1996). Here, the trial court made detailed oral findings at the conclusion of the CrR 3.6 hearing. Because the written findings and conclusions of law are consistent with the trial court's oral ruling and there is no suggestion of tailoring, Hankerson cannot show prejudice. See State v. Tagas, 121 Wn. App. 872, 875, 90 P.3d 1088 (2004).

To determine whether there are exigent circumstances, we look at the totality of the circumstances. State v. Smith, 165 Wn.2d 511, 518, 199 P.3d 386 (2009). Six factors guide this analysis:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably.

State v. Cardenas, 146 Wn.2d 400, 406, 47 P.3d 127, 57 P.3d 1156 (2002).

The Washington Supreme Court has also identified five circumstances that " 'could be termed "exigent" ' " circumstances:  " '(1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; and (5) mobility or destruction of the evidence.' " State v. Tibbles, 169 Wn.2d 364, 370, 236 P.3d 885 (2010)[2] (quoting State v. Counts, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983)).

Not all factors must be met in order to find exigent circumstances, however, the circumstances must show the officers needed to act quickly. Cardenas, 146 Wn. 2d. at 408. Accordingly, we measure exigency, in part, by considering whether it was feasible for the police to guard the premises while seeking a warrant. Tibbles, 169 Wn.2d at 371; State v. Hinshaw, 149 Wn. App. 747, 755, 205 P.3d 178 (2009); City of Seattle v. Altschuler, 53 Wn. App. 317, 321, 766 P.2d 518 (1989).

> The rationale behind the exigent circumstances exception "is to permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence."

Smith, 165 Wn.2d at 517 (quoting State v. Audley, 77 Wn. App. 897, 907, 894 P.2d

---

[2] Emphasis in original.

1359 (1995)). The State must show reasons why it was impractical or unsafe to take the time to get a warrant. Tibbles, 169 Wn.2d at 371-72; Hinshaw, 149 Wn. App. at 755.

We conclude the record does not support the conclusion that the warrantless entry into the garage was lawful. The record shows the police had probable cause to believe the Lexus was stolen and Hankerson was in the garage. But the testimony showed the windowless detached garage was made of "solid concrete" with "only one way in, one way out." According to Officer Stone and Officer Walter, there were anywhere from three to eight patrol cars parked in front of the garage and in the driveway. See Altschuler, 53 Wn. App. at 321-22 (concluding there was no evidence defendant was likely to escape if not swiftly apprehended because officers were blocking the garage door with their vehicle). And significantly, there was no evidence the police could not obtain a warrant. Nothing in the record indicates the officers could not have kept the garage under surveillance while obtaining a warrant. See Counts, 99 Wn.2d at 60 (concluding police were not in "hot pursuit" at the time they entered defendant's home to arrest him because they knew he was inside and "easily could have maintained surveillance while waiting for a warrant").

The State contends even if the officers' entry into the garage was unlawful, the error was harmless. The failure to suppress evidence obtained in violation of the Fourth Amendment and article 1, section 7 is presumed prejudicial. State v. McReynolds, 117 Wn. App. 309, 326, 71 P.3d 663 (2003). The State bears the burden of showing a constitutional error was harmless beyond a reasonable doubt. State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). Constitutional error is harmless where we are

15

convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. Easter, 130 Wn.2d at 242. "Under the 'overwhelming untainted evidence' test, the appellate court looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Because the overwhelming and untainted evidence establishes Hankerson was guilty of possession of the stolen Lexus and of taking the Lexus without permission, we are convinced beyond a reasonable doubt that the jury would have reached the same result. The evidence established the police tracked the stolen Lexus to the garage and the license plate that was "loosely attached" to the Lexus matched the license plate on the 1992 Honda Accord Officer Clark followed earlier that day. Officer Bauer testified that the evening of July 10, he found the 1992 Honda Accord parked around the corner from Auto Quest. Hankerson's fingerprints matched those found inside the Honda.

Without objection, the neighbor identified Hankerson and testified he saw Hankerson driving the Lexus and going into the garage. Antioquia testified Hankerson drove to a car dealership the afternoon of July 10, 2011, parked the white Honda around the corner, disappeared for a few minutes, and returned driving the Lexus. Antioquia testified Hankerson removed the license plate from the Honda and put it on the back of the Lexus and they drove to the garage on Beacon Hill.

Seizure of 2007 Range Rover

Hankerson contends the court erred in denying his motion to suppress the fingerprints found in the Range Rover. Hankerson asserts the warrantless seizure of the Range Rover violated article 1, section 7 of the Washington State Constitution. The

16

State argues Hankerson does not have standing to challenge the seizure. In the alternative, the State contends the officers had probable cause to impound the Range Rover.

Assuming, without deciding, that Hankerson has standing, we conclude the record establishes probable cause to seize and impound the 2007 Range Rover. A vehicle may be lawfully impounded if "the police have probable cause to believe the vehicle has been stolen or used in the commission of a felony offense." State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). Even when authorized by statute, " 'impoundment must nonetheless be reasonable under the circumstances to comport with constitutional guaranties.' " Tyler, 177 Wn.2d at 698-99 (quoting State v. Hill, 68 Wn. App. 300, 305, 842 P.2d 996 (1993)). "The police officer does not have to exhaust all possible alternatives, but must consider reasonable alternatives." Tyler, 177 Wn.2d at 699.

Substantial evidence supports the trial court's finding that Trooper Bennett had probable cause to believe the Range Rover was stolen or used in the commission of a felony offense. Trooper Bennett testified he knew the Seattle Police Department pursued the Range Rover from Seattle and had requested assistance. The driver of the Range Rover drove down a bike path and through a closed gate to elude the police. Trooper Bennett testified the Range Rover did not have a front or back license plate and the temporary license tag in the back window did not belong to the vehicle. Trooper Bennett testified he and his fellow troopers did a perimeter check of the neighborhood "to make sure there was no one around" and spoke to a neighbor who did not recognize the Range Rover and said that "they hadn't seen anyone in the area." Trooper Bennett

17

testified he believed the Range Rover might have been involved in a crime and called a tow truck to take the vehicle to a secure location to determine the registered owner. The owner of the Range Rover later gave consent to search the Range Rover. The court did not err in denying the motion to suppress the fingerprints found in the Range Rover.

Patrol Car Dashboard Video

Hankerson argues the court abused its discretion by admitting the patrol car dashboard video of his arrest. Hankerson asserts prejudice outweighed the probative value of showing him being arrested at gunpoint and searched by police.

Under ER 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). The trial court is vested with broad discretion in balancing the relevance of probative evidence and prejudice. State v. Baldwin, 109 Wn. App. 516, 528, 37 P.3d 1220 (2001).

Below, defense counsel argued that the portion of the video showing the officers opening the garage with their guns drawn "could possib[ly] be prejudicial" and was "cumulative." The portion of the video Hankerson objected to shows four police officers approaching the garage. Two of the officers draw their weapons and point them at the garage door while another officer pulls the door open. Hankerson walks out of the garage wearing a white tank top. The officers keep their weapons pointed at Hankerson for a few seconds until Antioquia walks out of the garage. The officers then holster their weapons and search Hankerson while he stands next to one of the cars parked in the

18

driveway. An officer handcuffs Hankerson and places him in the back of a patrol car. Hankerson appears calm and cooperative throughout.

After watching the patrol car dashboard video, the trial court allowed the State to introduce the video into evidence, ruling the evidence was not "unduly prejudicial."

> I do think that the entry into the garage and the removal of the defendant is appropriate. It's a very brief depiction I think of the officers with their guns drawn, it's consistent with their testimony of Officer Stone and others. I don't think it's unduly prejudicial so I would allow it.

The trial court did not abuse its discretion in ruling the probative value of the evidence outweighed any prejudice. The officers appear with their weapons drawn for less than a minute and Hankerson is seen in handcuffs for only approximately one-and-one-half-minutes. In any event, admission of the evidence was harmless. An evidentiary error is harmless "if the evidence is of minor significance compared to the overall evidence as a whole." State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002).

Attempting To Elude a Pursuing Police Vehicle

Hankerson contends insufficient evidence supports his conviction of attempting to elude a pursuing police vehicle on July 10, 2011. Hankerson asserts the State failed to establish Officer Clark was in uniform during the pursuit.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). In deciding whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found

19

the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

RCW 46.61.024 defines the crime of attempting to elude a police vehicle. RCW 46.61.024(1) provides:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. <u>The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.</u>[3]

To convict Hankerson of attempting to elude a pursuing police vehicle, the State had the burden of proving beyond a reasonable doubt that Officer Clark was in uniform when attempting to stop the car after activating her patrol car emergency lights and siren. State v. Hudson, 85 Wn. App. 401, 403-05, 932 P.2d 714 (1997); State v. Fussell, 84 Wn. App. 126, 128, 925 P.2d 642 (1996). The State did not meet its burden of proving Officer Clark was in uniform.

In Hudson, we reversed the conviction for attempting to elude because "[e]vidence that the officers were in a marked vehicle and that [the defendant] probably knew that they were police officers, without more, is insufficient to permit a rational trier of fact to infer beyond a reasonable doubt that these officers were in uniform." Hudson, 85 Wn. App. at 405.

The testimony at trial does not create a reasonable inference that Officer Clark was in uniform during the pursuit. Officer Clark testified she activated the emergency lights on her police vehicle and attempted to pull Hankerson over

---

[3] Emphasis added.

20

while "on duty." Officer Clark also testified that as a patrol officer, she would "show more presence" in areas of high crime. As an example, Officer Clark said if a grocery store were having "shoplift problems," she would sit in her patrol car in the parking lot and do paperwork. The testimony of another police officer that "normally" when he is "on patrol," he is "in [his] police uniform," also does not establish that Officer Clark was in uniform at the time she signaled the vehicle to stop.

Because the evidence did not establish Officer Clark was in uniform at the time she attempted to pull Hankerson over, we reverse the conviction for attempting to elude a pursuing police vehicle with prejudice.

We affirm the convictions for possession of the stolen 2007 Range Rover and the stolen 1992 Honda and taking the 2007 Lexus without permission in the first degree. We reverse the conviction for attempting to elude, and remand for entry of an order of dismissal and resentencing.

WE CONCUR: