[Nos. 30684-7-I; 31471-8-I.    Division One.    January 17, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN A. JONES, *Appellant*.

*In the Matter of the Personal Restraint of* STEVEN A. JONES, *Petitioner*.

*Rita J. Griffith* of *Washington Appellate Defender Association,* for appellant.

*Jim Krider, Prosecuting Attorney,* and *David Frederick Thiele, Deputy,* for respondent. [As amended by order of the Court of Appeals February 16, 1995.]

SCHOLFIELD, J.* — Steven A. Jones appeals his convictions for delivery of cocaine, in violation of RCW 69.50.401(a), and possession of cocaine with intent to manufacture or deliver, in violation of RCW 69.50.401(a). He argues that the trial court erred in denying his motion to suppress evidence seized in a warrantless search of his person and in forcing him to testify as a State's witness against himself. Jones' personal restraint petition is consolidated with his direct appeal. We affirm the judgment and sentence and deny the petition.

## FACTS

By information filed March 6, 1992, Jones was charged with one count of delivery of cocaine and one count of possession of cocaine with the intent to deliver. A jury convicted him as charged. Those convictions were based on the following facts.

On February 13, 1992, Detectives Connor, Bard and Bredeson of the South Snohomish County Narcotics Task Force sent two confidential informants, David Palmer and Norman Hunter, into room 28 of the Golden West Motel in Edmonds to purchase cocaine from Jones. Hunter, who was

---

*This opinion was filed after the retirement of Judge Jack P. Scholfield, but it was signed by Judge Scholfield prior to his retirement.

"working off" his own drug arrest, eluded the police after leaving room 28. Palmer provided two pieces of rock cocaine to the police and testified at trial that Jones had sold them to him that evening.

Palmer had a good track record with many other police agencies. Before the buy, the police searched Palmer and his car, finding no drugs. The police gave Palmer buy money and recorded the serial numbers. The police watched Palmer go into the motel room and then return. He did not contact anyone outside the motel room.

When Palmer first saw Jones in room 28, he recognized him from a photograph he had been shown. He later identified Jones in court. While in room 28, Palmer asked Jones for $30 worth of cocaine. Jones went into the bathroom. Upon coming out, Jones held out his open palm and peeled back the palm part of a half glove (a glove without fingers) revealing four to five rocks of cocaine. Jones picked out two rocks and gave them to a female, later identified as Virginia Graves. Graves gave the cocaine to Palmer. Palmer gave the money to Graves who gave it to Jones. After the transaction was complete, Palmer left the motel room. Palmer then met Officer Connor, gave him the cocaine, and advised him of what had happened.

About 10 minutes after Palmer left the motel room, Jones came out and was arrested. In Jones' pocket, the police found the buy money which had been given to both Palmer and Hunter. Detective Bard heard something drop near where Jones was standing. A glass tube used as a crack cocaine smoking pipe was found in that location.

Before placing Jones in his patrol car, Officer Bonallo searched the car, finding no contraband. The patrol car had a molded seat which eliminated the possibility of stuffing items between seat cushions. Bonallo also patted Jones down for drugs and weapons. None were found. However, Jones dropped cocaine onto the floor of the patrol car while being transported to the Lynnwood Jail. The several rocks of cocaine were worth $300, which was a "relatively large amount" and was consistent with an amount that was intended for sale.

<u>The Suppression Facts</u>. During the trial, the defense challenged the admission of a plastic tube recovered from Jones' anus during a warrantless custodial search in the "drunk tank" or holding cell of the Lynnwood Jail. The tube was introduced as evidence of intent to deliver, based on the theory that a person would not conceal drugs in a body cavity if that person were just a user.

Officer Bonallo of the Edmonds Police Department testified that he transported Jones from the Golden West Motel to the Lynnwood Jail. Because Jones made furtive movements, Bonallo radioed Detective Connor for assistance. Connor met Bonallo outside the jail. At that time, both officers knew that suspected cocaine had been sloughed onto the floor of the patrol car and that no drugs were found on Jones' person when he was searched incident to arrest and prior to being placed in the car. Connor also testified that some unnamed person in room 28 told him Jones carried drugs in a tube in his rectum.

The officers took Jones into the drunk tank. Although Bonallo and Connor testified differently on some details, both agreed that by that time Connor had put on surgical-type rubber gloves and Jones knew he was going to be more intensively searched. The officers had communicated to Jones that they believed there might be drugs in his rectum. Jones lowered his pants and underwear and then was told to bend over and spread the cheeks of his buttocks. According to the officers, when he did that, a small portion of the tube extended from his anus, and Connor removed the tube by touching that extended portion. The tube was open.[1] Detective Connor did not touch Jones.

Jones testified that he himself pulled a small portion of the tube out and offered to remove it because he did not want the officers to conduct a body cavity search of his rectum, as they clearly indicated they intended to do. He said the officers told him that they were going to go in and get the tube.

---

[1] Apparently, while in the patrol car, Jones had managed to empty the tube of its contents.

Defense counsel argued that the warrantless search was improper whether or not it was considered to be a strip search or a body cavity search because Jones was coerced into making the tube available by threats of probing his rectum against his will.

The court ruled that the search was a strip search, properly conducted pursuant to RCW 10.79.070, rather than a body cavity search. Written findings of fact and conclusions of law were subsequently entered.

Jones' Testimony. Jones testified that he did not hand anything to Graves and that he did not get any money from her while in the same room with Palmer.

On cross examination, Jones admitted that he used drugs. He testified in response to the prosecutor's questioning that he hid the tube in his rectum because he was paranoid. On further questioning, Jones denied delivering cocaine to Graves or anyone else. When Jones was asked if he had ever delivered a controlled substance to anyone, the court sustained an objection from defense counsel. At the close of Jones' testimony, the defense rested its case.

The prosecutor then asked to be permitted to impeach Jones with his recent *Alford*[2] plea to a delivery charge in King County. The prosecutor argued that this was proper since the "tenor" of Jones' testimony was that he was just a user. Therefore, the delivery conviction was admissible to impeach his credibility.

In response, defense counsel reiterated the gist of an in-chamber conference in which the prosecutor said that if Jones testified that he had never delivered drugs, there would be a problem because of the prior conviction. Defense counsel assured the court that he would not elicit that testimony, and counsel honored that assurance. Defense counsel further stated that he did not open the door but that Jones' statement that he was only a user arose during cross examination. Defense counsel argued that the prosecutor "should not be allowed to boot strap herself now into being allowed to ask now about the prior conviction."

---

[2]*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

The court ruled that the conviction would be admissible under ER 609 because Jones' response on cross examination was intended to create the impression that he was a user and had no other involvement with drug transactions. The court found that the conviction was probative of credibility and not unfairly prejudicial.

The court also ruled that if Jones did not take the stand again, it would allow the State to introduce documents as exhibits establishing Jones' delivery conviction. The State indicated that it would introduce the information and eight out of nine pages of the Statement of Defendant on Plea of Guilty.

Jones elected to waive his Fifth Amendment privilege so that he could be called as a State's witness and answer the question of whether he was convicted of delivery of cocaine in King County on January 17, 1992. On cross examination, Jones explained that he had entered an *Alford* plea to the delivery charge in order to take advantage of the State's recommendation and to avoid having the State add more charges.

Jones appeals.

## MOTION TO SUPPRESS

Jones first contends that the trial court erred in denying his motion to suppress evidence seized in a warrantless search of his person in jail. The State responds that the trial court properly denied the suppression motion because a strip search was allowed by statute, or alternatively, any error was harmless.

A "strip search" means "having a person remove or arrange some or all of his or her clothing so as to permit an inspection of the genitals, buttocks, anus, or undergarments of the person or breasts of a female person." RCW 10.79.070(1). A "body cavity search" means the "touching or probing of a person's body cavity, whether or not there is actual penetration of the body cavity." RCW 10.79.070(2). "Body cavity" means "the stomach or rectum of a person and the vagina of a female person." RCW 10.79.070(3). No person may be subjected to a body cavity search unless a search warrant is issued pursuant to Superior Court Criminal Rules. RCW 10.79.080(1).

■ Here, when Jones bent over a small portion of the tube protruded from his anus, and Officer Connor retrieved it by touching that extended portion. Detective Connor did not touch Jones. There is no evidence that either detective touched or probed Jones' rectum in any way. In absence of touching or probing Jones' body cavity, this search does not fall within the definition of a body cavity search under RCW 10.79.070(2). Rather, it was a strip search as defined in RCW 10.79.070(1).

Jones argues that the removal of the tube was not merely a strip search even if the tube extended beyond his anus and could be seen without touching and probing. He argues that Detective Connor touched him by removing the tube that was inserted into his body. Thus, the issue becomes whether removing an object inserted in a body cavity is a body cavity search. RCW 10.79.070(2) specifically defines a body cavity search as the *touching* or *probing* of a person's body cavity. The evidence is clear that Connor did not touch Jones' body cavity. The fact that he touched an object embedded inside the body cavity does not constitute touching the body cavity itself. Nor did his actions in removing the tube constitute "probing" Jones' body cavity. Accordingly, we conclude that removing an object from a body cavity without touching or probing the person does not constitute a body cavity search under RCW 10.79.070(2).[3]

Because this was a strip search, the next issue to be decided is whether the search was properly conducted without a warrant. Three exceptions exist to the rule that a search warrant is required to conduct a strip search. The exception applicable to the present case is as follows:

> (a) There is a reasonable suspicion to believe that a strip search is necessary to discover weapons, criminal evidence, contraband, or other thing concealed on the body of the person

---

[3]This conclusion is supported by *United States v. Holtz*, 479 F.2d 89, 92 (9th Cir. 1973) (search was held to be a strip search and not a body cavity search where the defendant was required to bend over and spread her buttocks revealing a prophylactic hanging from her vaginal area, and the inspectress seized the prophylactic).

to be searched, that constitutes a threat to the security of a holding, detention, or local correctional facility;

RCW 10.79.130(1)(a). For the purposes of subsection (1) of this section, a reasonable suspicion is deemed to be present when the person to be searched has been arrested for:

(c) An offense involving possession of a drug or controlled substance . . .

RCW 10.79.130(2).

Here, Jones was arrested for an offense involving possession of cocaine which, under RCW 10.79.130(2)(c), automatically means that a reasonable suspicion is deemed to be present. Thus, the search was properly conducted without a warrant.

Jones next argues that Detective Connor either explicitly or implicitly threatened to use his gloved fingers to probe inside Jones' rectum, and that this was an improper threat because such a search was prohibited without a search warrant. *See* RCW 10.79.080(1). According to the record, the officers indicated to Jones that they thought he might have drugs in his rectum, and at the same time Detective Connor put rubber gloves on. The understanding was that Jones was to be more intensively searched. These facts could easily have led Jones to believe that he would be subject to a body cavity search.

However, even if Jones thought he would be subject to a body cavity search, no unlawful search resulted from this assumption. The trial court found in its conclusions as to disputed facts that Jones did not touch or adjust the tube with his hands in response to his belief that he would be subjected to a body cavity search. Had he done so, that well may have constituted a search. *See United States v. Mastberg*, 503 F.2d 465, 471 (9th Cir. 1974) (where defendant was told by border inspector that if she did not remove object from her body cavity a doctor would be called to do so, defendant's removal of the object constituted a "search"). However here, Jones simply offered to remove the tube himself. That offer alone did not constitute an illegal search.

Accordingly, we conclude that the search was a strip search and not a body cavity search, and that the motion to suppress was properly denied.

Pursuant to RCW 2.06.040, the remainder of this opinion, not being precedential, will not be published.

GROSSE and AGID, JJ., concur.

Review denied at 126 Wn.2d 1016 (1995).