IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUN 20 2007

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA, )
)
Appellant, )        2 CA-CR 2006-0191
)        DEPARTMENT B
v. )
)        O P I N I O N
PATRICIA A. BARNES, )
)
Appellee. )
                                          )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CR200500551

Honorable Wallace R. Hoggatt, Judge

AFFIRMED

---

Edward G. Rheinheimer, Cochise County Attorney
  By David R. Pardee                                                    Bisbee
                                                          Attorneys for Appellant

Mark A. Suagee, Cochise County Public Defender
  By Robert J. Zohlmann                                                 Bisbee
                                                           Attorneys for Appellee

---

E C K E R S T R O M, Presiding Judge.

¶1 A Cochise County grand jury indicted appellee Patricia Barnes on one count each of possessing a dangerous drug for sale, a class two felony, and resisting arrest by using physical force, a class six felony. Barnes moved to suppress evidence found during a strip search following her arrest, which included a bag containing methamphetamine that protruded from her anus and was removed during the search. The trial court granted the motion, finding that the strip search, lawful under the facts of the case, became a body cavity search, requiring a warrant, at the moment the officer touched the bag that extended into Barnes's rectum. On appeal, the state contends that, because the officer did not touch Barnes internally, the officer did not require a warrant to handle the protruding portion of the bag. We affirm.

¶2 In reviewing a trial court's ruling on a motion to suppress evidence, we defer to its factual findings, *State v. Bonillas*, 197 Ariz. 96, ¶ 2, 3 P.3d 1016, 1016 (App. 1999), and review only what was presented during the suppression hearing, *State v. Estrada*, 209 Ariz. 287, ¶ 2, 100 P.3d 452, 453 (App. 2004). On June 27, 2005, a Willcox police officer attempted to arrest Wesley Bohlender on an outstanding warrant. Barnes, Bohlender's girlfriend, intervened and tried to prevent the officer from arresting Bohlender. During the struggle, the officer saw Bohlender hand a small paper item to Barnes. The officer then saw Barnes move her hand down the front of her pants. He arrested Barnes for intervening in the arrest of Bohlender.

**¶3** The arresting officer told Sergeant Childers, who transported Barnes to a Cochise County Sheriff's detention facility, that Barnes should be searched because she might have some contraband. Prior to booking Barnes, and without seeking a search warrant, Childers arranged for Lori Armstrong, a female city code enforcement officer,[1] to search Barnes. Childers did not specify the type or extent of search that he sought, but Armstrong understood that she was to perform a strip search.

**¶4** Armstrong took Barnes to an isolated cell and ordered Barnes to disrobe. Armstrong instructed Barnes to show the area behind her ears, then bend over and spread her buttocks. Armstrong saw something protruding out of Barnes's anus and asked Barnes to remove it. Barnes did not do so. Wearing rubber gloves, Armstrong then "grabbed a hold of the item" and it fell into her hands. The item was a bag that allegedly contained methamphetamine. During a subsequent interview, Barnes purportedly made incriminating statements about the bag.

**¶5** On appeal, the state maintains the trial court erred in suppressing the bag removed from Barnes's rectum, contending "[t]he police may remove and examine what they find during the course of a warrantless strip search, including items found sticking out of the anus." We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Fodor*, 179 Ariz. 442, 448, 880 P.2d 662, 668 (App. 1994). Although we defer to

---

[1]Armstrong had never been trained in how to conduct searches of this kind, but had performed ten to fifteen strip searches prior to Barnes's search.

3

the trial court's factual findings, we "review de novo legal issues and mixed questions of fact and law." *Bonillas*, 197 Ariz. 96, ¶ 2, 3 P.3d at 1016.

¶6        The trial court found that the officer's constitutional authority to conduct a search incident to arrest, coupled with the officer's reasonable basis to believe that Barnes had secreted evidence on her person, justified the strip search and visual body cavity inspection. However, it concluded that a warrant was required for the officer to handle and remove the bag from Barnes's rectum. The trial court granted Barnes's motion, suppressing "the physical evidence seized from Defendant as well as any statements made to the police concerning such item following seizure." The state contends the factors entitling it to conduct the strip search, coupled with the fact that the officer did not herself reach into Barnes's body cavity—but merely handled the protruding portion of the bag—allowed the officer to remove the bag without a warrant.

¶7        As a threshold matter, controlling jurisprudence instructs that the state must generally secure a warrant before a law enforcement officer may intrude beyond the body's surface. In *Schmerber v. California*, 384 U.S. 757, 770, 86 S. Ct. 1826, 1835 (1966), *quoting Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 369 (1948), the United States Supreme Court observed:

> Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer

4

engaged in the often competitive enterprise of ferreting out crime." The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

(Citation omitted.) There, the Court expressly rejected the government's contentions that either the fact of a defendant's arrest or the presence of probable cause obviated the need for a warrant to conduct a search beyond the body's surface. *Id.* at 769-70, 86 S. Ct. at 1835. Thus, we must similarly reject the state's suggestion here that removal of the bag in the absence of a warrant was justified by Barnes's arrest or the likelihood that the protruding bag contained an illegal substance.[2]

¶8        The state primarily contends that Armstrong did not intrude beyond the surface of Barnes's body because "no piercing, probing, or even touching of the skin was required to seize" the bag. *See State v. Magness*, 115 Ariz. 317, 321, 565 P.2d 194, 198 (App. 1977) (visual search of area "around the rectum" permissible in absence of a warrant as part of search incident to arrest.) To address this contention, we must determine whether an officer transforms a lawful warrantless strip search into an intrusion beyond the body's surface requiring a warrant when he or she handles an object protruding from, and extending into, an arrestee's anal cavity. Although the state correctly observes that its officer neither

---

[2]*Schmerber* also held that the presence of exigent circumstances creates an exception to the warrant requirement in the context of a blood test. 384 U.S. at 770-71, 86 S. Ct. at 1835-36. Because the state has not contended that any exigency existed here, we need not address whether Armstrong could have conducted a body cavity search in the absence of a warrant upon such a showing.

5

inserted any object, digit, or instrumentality into Barnes, the officer's manipulation and removal of the protruding portion of the bag necessarily exerted force on the portion of the bag extending into Barnes's rectum. And the officer's actions had the effect of moving the portions of the bag within Barnes's rectum as the bag emerged. Once an officer's actions have the effect of exerting force within an arrestee's body, we decline to draw constitutional distinctions based on the mechanism by which the officer does so. The invasion of privacy is the same regardless of the mechanism used.[3] *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1449, 1449 n.11 (9th Cir. 1991) (finding "*Schmerber* governs all searches that invade the interior of the body" and is not limited to "cases in which skin is pierced or entry is forced"). Moreover, the Court's opinion in *Schmerber* instructs that the instrusiveness of a body search must be assessed in part by the potential risks of inflicting trauma or pain. 384 U.S. at 771-72, 86 S. Ct. at 1836. Although nothing in the record suggests that Barnes actually suffered any trauma or pain, we have little doubt that an officer's removal of items extending into a suspect's "innards" generally poses such *potential* risks, the relevant consideration here.[4]

¶9         We are not the first court to conclude that an officer must secure a warrant to remove items partially protruding from an arrestee's rectum. In *Hughes v. Commonwealth*,

---

[3]If an officer sought to remove a feminine tampon as part of a search, we would face the same privacy interest we address here—an item extending into a body cavity but with a portion remaining externally visible.

[4]When the officer grabbed the protruding plastic, she did not know the nature or content of the item extending into Barnes's rectum. For this reason, we cannot agree with the dissent's conclusion that the officer's action posed no potential threat to Barnes's health or safety.

6

524 S.E.2d 155, 159, 162 (Va. Ct. App. 2000), *quoting Commonwealth v. Gilmore*, 498 S.E.2d 464, 469 (Va. Ct. App. 1998), the court found that an officer's removal of a plastic bag protruding halfway from a defendant's rectum constituted an "intrusive physical body cavity search" requiring a warrant in the absence of both exigent circumstances and "'a clear indication that evidence is located within a suspect's body.'" And, in *People v. More*, 764 N.E.2d 967, 969 (N.Y. 2002), *quoting People v. Luna*, 535 N.E.2d 1305, 1308 (N.Y. 1989), New York's highest court characterized physical body cavity searches, such as the seizure of a bag partially protruding from a suspect's rectum, as "'invasive'" and "'degrading'" and found such searches "at least as intrusive" as the blood test procedures addressed in *Schmerber*. Accordingly, the court held the evidence found in the suspect's rectum should have been suppressed because officers had neither complied with the warrant requirement set forth in *Schmerber* nor articulated exigent circumstances sufficient to obviate the need for a warrant. *More*, 764 N.E.2d at 969-70.

¶10 The state counters that several cases have declined to characterize the removal of items protruding in plain view from body cavities as body cavity searches. But those cases did not squarely address the scenario presented here. Although the Washington Court of Appeals found that the removal of an item protruding out of a body is not a body cavity search, it did so exclusively in the context of determining the propriety of that action under the wording of a Washington statute. *State v. Jones*, 887 P.2d 461, 464 (Wash. Ct. App. 1995). And the Ninth Circuit has held that an inspector did not conduct a body cavity search

7

when she observed and seized a prophylactic partially protruding from a suspect's vagina. *United States v. Holtz*, 479 F.2d 89, 91-92 (9th Cir. 1973). But that case focused on whether the visual inspection of the vaginal area under the specific facts constituted a body cavity search—and only inferentially addressed whether the handling and removal of the prophylactic involved an intrusion sufficient to trigger the warrant requirement of *Schmerber*. *Holtz*, 479 F.2d at 92-94. Moreover, *Holtz* involved a search conducted at a national port of entry, *id.* at 90, a context where defendants arguably enjoy a diminished expectation of privacy. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 539, 105 S. Ct. 3304, 3309 (1985) (expectation of privacy less at border). Finally, to the extent *Holtz* can be interpreted as inferentially addressing the legal issue here, the Ninth Circuit has more recently rejected that inference. *Fuller*, 950 F.2d at 1449-50 (expressly applying *Schmerber* warrant requirement to searches into the interior of a person's body).

¶11 The dissent contends the trial court erred in requiring a warrant for the removal of the bag because, under the specific circumstances of the case, the search was "reasonable." But we do not agree with the dissent's threshold premise that the officer's act of manipulating an item extending into the defendant's rectum, however gentle, was necessarily less intrusive than the procedure at issue in *Schmerber*—a blood draw the Court characterized as safe, commonplace, and nontraumatic. And, notwithstanding the Court's acknowledgment that the blood draw was a comparatively benign intrusion, it carved no exceptions to its conclusion that police "intrusions into an individual's body" in search of

8

evidence would presumptively require a warrant in the absence of exigent circumstances. 384 U.S. at 772, 86 S. Ct. at 1836. Thus, to the extent the dissent suggests that some lesser types of state intrusion inside a defendant's body could proceed without a warrant based on the mere presence of reasonable or probable cause, that view is directly contradicted by controlling jurisprudence we must follow. *Id.* at 771, 86 S. Ct. at 1836.

¶12        The dissent also maintains the officer was entitled to remove contraband from Barnes's rectum without a warrant because the officer could see it in plain view. Correctly observing that officers need not obtain a warrant to seize evidence they are lawfully situated to observe, *see Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 2136-37 (1993), the dissent argues that no warrant should be required "in cases such as this, where contraband is visible between the cheeks of the buttocks." But nothing in the record supports our colleague's assertion that the officer saw contraband between the cheeks of Barnes's buttocks. According to Armstrong's testimony, the officer observed only something that "looked like plastic" protruding from Barnes's rectum.[5] And Armstrong's subsequent act of grabbing the plastic to remove unexposed portions of it from Barnes's rectum constituted a separate intrusion, which required its own constitutional basis. *See Arizona v. Hicks*, 480 U.S. 321, 324-25, 107 S. Ct. 1149, 1152 (1987) (officers who initially observed stereo equipment in plain view conducted new search, unjustified by plain view doctrine, when

---

[5]We do not suggest that Armstrong's observation of the plastic was an irrelevant fact. Indeed, a magistrate might well consider the plastic's unusual location a significant factor in assessing whether probable cause existed to issue a warrant to remove it.

9

lifting equipment to search for serial numbers). In the absence of exigent circumstances, the constitutional basis for a search that reaches inside a person's body is probable cause determined by a neutral detached magistrate. *See Schmerber*, 384 U.S. at 770, 86 S. Ct. at 1835.

¶13 Quoting reasoning by the United States Supreme Court in the context of searches incident to arrest, the state contends that we should adopt a "'single familiar standard'" in setting the boundaries for warrantless searches and seizures because law enforcement officers "'have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.'" *New York v. Belton*, 453 U.S. 454, 458, 101 S. Ct. 2860, 2863 (1981), *quoting Dunaway v. New York*, 442 U.S. 200, 213-14, 99 S. Ct. 2248, 2257 (1979). While we acknowledge the need for our nation's laws to be comprehensible and practical for our law enforcement officers, we do not believe the long-standing principles that control our decision here involve unreasonable complexity. It should be intuitive that searches intruding within a person's body involve substantial privacy interests at least parallel to those involved in searching a suspect's home; therefore, such searches presumptively require a warrant.

## CONCLUSION

¶14 As the Court emphasized in *Schmerber*, a governmental search within a crime suspect's body profoundly implicates "[t]he interests in human dignity and privacy which the Fourth Amendment protects." 384 U.S. at 769-70, 86 S. Ct. at 1835. For that reason, such

10

searches cannot generally be conducted without a warrant. When Officer Armstrong manipulated an item extending into Barnes's rectum in search of evidence, she intruded on those very dignity and privacy interests. Because the state failed to either secure a warrant or establish any valid exception to the warrant requirement for that search,[6] the trial court did not err in suppressing its fruits.[7]

**¶15**　　　Affirmed.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

---

[6]As noted, the state did not argue below or on appeal that it faced any exigent circumstance that would have required Armstrong to remove the bag from Barnes's rectum before securing a warrant. The state did not maintain that the circumstances created a risk that the evidence could be destroyed or that the contents of the bag posed an imminent health risk to Barnes. Nor did the state contend that the search, conducted to investigate criminal wrongdoing before Barnes was booked, was an institutional search subject to relaxed constitutional standards. *See Bell v. Wolfish,* 441 U.S. 520, 560, 99 S. Ct. 1861, 1885 (1979) (permitting warrantless visual body cavity searches in correctional institutions when searches are conducted in reasonable fashion in pursuit of legitimate governmental concerns). Lastly, it did not contend that the evidence would have been inevitably discovered subject to such a search after Barnes was booked. Although the state addressed some of these issues during oral argument in this court, we do not address arguments raised for the first time at that stage in the proceedings. *See State v. Murdaugh*, 209 Ariz. 19, ¶ 29, 97 P.3d 844, 851 (2004).

[7]Because we affirm the trial court's ruling suppressing the evidence in the bag for the reasons stated above, we need not address Barnes's contention that the officer lacked sufficient cause to conduct the strip search that ultimately led to the discovery of the protruding bag.

E S P I N O S A, Judge, dissenting.

¶16     Because the officers reasonably suspected Barnes was concealing contraband; conducted a lawful strip search incident to her arrest, *see United States v. Brack*, 188 F.3d 748, 758-59 (7th Cir. 1999), *State v. Magness*, 115 Ariz. 317, 321, 565 P.2d 194, 198 (App. 1977); and, without any inspection or intrusion into a body cavity,[8] seized evidence in plain view that they were lawfully situated to observe, *see Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 2136-37 (1993), I would find no constitutional violation occurred and that the trial court erred in suppressing the resulting evidence.

¶17     The Fourth Amendment does not prohibit all searches and seizures, only those that are unreasonable. U.S. Const. amend. IV. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884 (1979). Without question, a search that intrudes beyond the body's surface goes to the heart of "the human dignity and privacy which the Fourth Amendment protects" and, generally, cannot be performed without a warrant. *See Schmerber*, 384 U.S. at 770, 86 S. Ct. at 1835. A law enforcement officer clearly intrudes

---

[8]The majority subtly but significantly mischaracterizes my position when it expresses disagreement with "the dissent's threshold premise that the officer's act of manipulating an item extending into the defendant's rectum, however gentle, was necessarily less intrusive than the procedure in *Schmerber*—a blood draw." I neither say nor suggest anything of the kind. The record establishes that no intrusion, gentle or otherwise, occurred, notwithstanding the majority's novel theory that removal of the plastic baggie "had the effect" of exerting some type of "force" within the body. *Schmerber*, however, does not rely on such delicate quantum mechanics, nor should the reasonableness of an otherwise lawful search.

12

beyond the body's surface by piercing the skin in order to draw a blood sample, *see id.*, or inserting digits or instruments into a body cavity in an attempt to search for or secure evidence. *See, e.g., United States v. Nelson*, 36 F.3d 758, 761 (8th Cir. 1994) (endoscopic examination violated Fourth Amendment where not authorized by search warrant); *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976) (Fourth Amendment violated where defendant subjected to digital rectal probes and enemas and forced to drink laxative); *see also Conwell v. State*, 714 N.E.2d 764, 767-68 (Ind. Ct. App. 1999) (defendant's constitutional rights violated when placed in chokehold and forced to spit out contraband). The strip search in this case did not somehow become transformed into such a situation.

¶18        Armstrong, during a lawful inspection of Barnes's body, saw a plastic bag extending from her rectal area. She testified that she "touch[ed] the item," and it immediately "fell out." There "'was no piercing or probing of [Barnes's] skin, nor forced entry beyond the surface of h[er] body.'" *Magness*, 115 Ariz. at 321, 565 P.2d at 198, *quoting United States v. Klein*, 522 F.2d 296, 300 (1st Cir. 1975). The search in this case raises different, and I believe less grave, considerations for a person's privacy, dignity, and health than when the state causes something to intrude, *i.e.*, to either forcefully enter or visually peer into a person's body. Only that situation was addressed by the court in *Schmerber*. 384 U.S. at 767, 86 S. Ct. at 1834 ("[W]e are dealing with intrusions into the human body . . . ."). Thus, *Schmerber* helps guide but does not control our decision here.

13

¶19     This search was reasonable and within the bounds of the Fourth Amendment. The reasonableness of a search can be determined from the scope of the intrusion, the place where the search was conducted, the manner in which it was conducted, and the justification for initiating it. *See Wolfish*, 441 U.S. at 559, 99 S. Ct. at 1884. Here, the officers had ample reason to suspect Barnes was concealing contraband, and they were permitted to conduct a strip search and to examine the area around her rectum. *See Magness*, 115 Ariz. at 321, 565 P.2d at 198; *see also Swain v. Spinney*, 117 F.3d 1, 7 (1st Cir. 1997) ("[T]he reasonable suspicion standard governs strip and visual body cavity searches in the arrestee context . . . ."); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991) (strip search and visual body cavity inspection of arrestee justified by reasonable suspicion); *Klein*, 522 F.2d at 300 (upholding strip search and visual inspection of rectal area after arrest for drug possession). The search was performed by a female officer in a secluded and unoccupied cell. *See Justice v. City of Peachtree City*, 961 F.2d 188, 193 (11th Cir. 1992) (strip search performed in least offensive manner where officers were same sex as arrestee and only participants during search). The record suggests the search was brief and not conducted in an offensive manner, no physical force beyond touching the item was required to dislodge it, and there was little or no threat to Barnes's health and safety. *See Winston v. Lee*, 470 U.S. 753, 761, 105 S. Ct. 1611, 1617 (1985) (threat to health and safety of individual a factor in determining intrusiveness of search).

¶20　　　　　Generally, law enforcement officers need not obtain a warrant to seize evidence that is in plain view and that they are lawfully situated to observe. *See Dickerson*, 508 U.S. at 374-75, 113 S. Ct. at 2136-37. Thus, a warrant is not required to seize contraband that is found between the cheeks of the buttocks during a lawful strip search incident to an arrest. *See People v. Walker*, 810 N.Y.S.2d 592, 595 (N.Y.App. Div. 2006); *People v. Wade*, 256 Cal. Rptr. 189, 191 (1989); *Commonwealth v. Thomas*, 708 N.E.2d 669, 671 (Mass. 1999); *McGee v. State*, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003). It makes little sense, therefore, to require officers to obtain a warrant in cases such as this, where contraband is visible between the cheeks of the buttocks and may be retrieved easily, without harm to the individual, but may be partially secreted in the rectum. *See New York v. Belton*, 453 U.S. 454, 458, 101 S. Ct. 2860, 2863 (1981) (Fourth Amendment doctrine should be expressed in readily applicable terms, not by set of rules with subtle nuances and hairline distinctions); *see also United States v. Ross*, 456 U.S. 798, 821, 102 S. Ct. 2157, 2171 (1982) ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . must give way to the interest in the prompt and efficient completion of the task at hand.").

¶21　　　　　In a case with facts similar to those before us, the Ninth Circuit Court of Appeals found that officers conducting a lawful strip search properly seized suspected contraband extending from a suspect's vaginal area because it was not a body cavity search. *United States v. Holtz*, 479 F.2d 89 (9th Cir. 1973). There, the defendant, while crossing the

15

international border, was suspected of concealing contraband and was strip searched.[9]  *Id*. at 90-91.  As part of the search, Holtz was asked "to bend over and spread her buttocks," and the United States Customs inspectress "saw part of a rubber prophylactic hanging down from Holtz's vaginal area."  *Id*. at 90.  The "prophylactic was readily viewable and [she] finished removing it from Holtz's vagina."  *Id*.  In denying Holtz's constitutional challenge and upholding the trial court's decision to admit the resulting drug evidence, the court found the officers had reasonably suspected Holtz was concealing contraband and had performed a lawful strip search, "not a body cavity search."  *Id*. at 92.  The court found there had been no "invasion and intrusion [as] regulated by . . . *Schmerber*."  479 F.2d at 94.  It distinguished *Schmerber* and its progeny from the officer's search of Holtz, stating "each of those cases involved an intrusion *into the body*," and by implication, found no such intrusion had occurred during the search at issue.  479 F.2d at 92.  The subsequent Ninth Circuit decision in *Fuller*, contrary to the majority's characterization, is entirely consistent with this conclusion and does not reject it in any way, holding only that when a body cavity is actually searched, unlike here, either exigent circumstances or probable cause is required.  950 F.2d at 1449-50.

---

[9]Although the court analyzed the strip search in light of the lowered expectation of privacy at the border, *see United States v. Montoya de Hernandez*, 473 U.S. 531, 539, 105 S. Ct. 3304, 3309 (1985), it also expressly, rather than inferentially as stated by the majority, addressed the separate issue, which we are faced with in this case:  whether removing suspected contraband in plain view but partly secreted in a body cavity constitutes an unconstitutional intrusion into the body under *Schmerber*.

16

¶22 Similarly, in *State v. Jones*, 887 P.2d 461 (Wash. Ct. App. 1995), the Washington State Court of Appeals found that officers conducting a lawful strip search incident to an arrest were not required to obtain a search warrant to seize suspected contraband extending from a suspect's rectum. Jones had been arrested for an offense involving possession of cocaine, and he was subsequently strip searched. *Id.* at 465. During the search, "a small portion of [a] tube protruded from his anus, and Officer Connor retrieved it by touching that extended portion. Detective Connor did not touch Jones." *Id.* at 464. On appeal, Jones argued the tube should have been suppressed at trial because the officers had searched a body cavity and, therefore, should have obtained a warrant. *Id.* In upholding the trial court's decision to admit the evidence, the appellate court stated: "The fact that [the officer] touched an object embedded inside the body cavity does not constitute touching the body cavity itself." *Id.* A warrant had not been required for the search because there was "no evidence that either detective touched or probed Jones' rectum in any way."[10] *Id.*

¶23 In sum, neither a search of nor an intrusion into a body cavity occurred here and I would follow the sensible path of *Holtz* and other courts that distinguish between an

---

[10]As the majority points out, the Washington appellate court based its decision on its interpretation of statutes governing the scope of searches rather than an interpretation of the Fourth Amendment. But the court implicitly found the search constitutional because it drew added support for its decision from *United States v. Holtz*, 479 F.2d 89 (9th Cir. 1973), a case decided on constitutional grounds. More importantly, any search authorized by a state's statutes must also comply with the Fourth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961) (Fourth Amendment enforceable against the states); *State v. Audley*, 894 P.2d 1359, 1365 (Wash. Ct. App. 1995) (Washington statutes regulating searches of persons comply with Fourth Amendment).

17

officer's merely touching an item that is in plain view and only partially secreted into a body cavity as opposed to causing an intrusion into the body cavity itself. The reasonableness standard of the Fourth Amendment is satisfied when an officer conducting a lawful strip search incident to an arrest observes likely contraband protruding from a body cavity, and retrieves it without discontinuing the search to obtain a warrant if the officer is able to do so easily, without any probing, touching, or entering into the suspect's body, as was the case here.[11]

_____

PHILIP G. ESPINOSA, Judge

---

[11]At what point such a situation might require a search warrant could, under some conceivable scenarios, become more difficult to determine, but a feminine tampon is clearly distinguishable from the protruding baggie here because anything resembling a tampon would ordinarily fail the threshold test of likely contraband in plain view. In any event, such a case is not before us.