

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36561-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICO ODELL DAVIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Rico Davis appeals from a conviction for possession of methamphetamine, arguing that he was improperly subjected to a strip search. We affirm.

FACTS

After first lying about his identity, Davis was arrested on both a department of corrections (DOC) warrant from a prior drug possession conviction and an arrest warrant for burglary. At the jail, he was subjected to a strip search due to the DOC warrant. Corrections officers observed and removed two plastic "baggies" from Davis' buttocks. They contained methamphetamine.

Spokane police had come in contact with him after a series of 911 calls reported strangers entering an apartment at 3:30 a.m.; one call reported that the men had been "let inside." The two female occupants, however, who did not speak much English and called

upon family members for help, wanted the two men removed. One man[1] was arrested on an outstanding warrant. The other man, Davis, identified himself as "Karl Davis" and reported that he had a non-extraditable warrant outstanding. When officers reported that his description and the birthdate he had given did not match those of Karl Davis, Rico Davis became agitated. An officer detained Davis because he did "not want to get in a fight" with him. The officer then patted Davis down and noted a wallet. When asked if his correct name could be found there, Davis admitted his true identity. The wallet was seized and he was subsequently arrested on the noted warrants.

Defense counsel filed a motion to suppress, arguing that Mr. Davis had been wrongly detained at the apartment. After conducting a hearing, Judge Maryann Moreno concluded that police were investigating the crime of trespass and properly detained Mr. Davis after he provided a false name. The motion was denied.

Counsel then moved to suppress the methamphetamine, arguing that Mr. Davis had been illegally searched at the jail. A second hearing was held before Judge Julie McKay. Judge McKay concluded that (1) the detention was proper due to the false identification, (2) a body cavity search did not occur, and (3) a strip search was properly conducted at the jail due to the DOC warrant for the earlier controlled substance conviction. The motion was denied.

---

[1] He turned out to be the son of the older apartment occupant.

A bench trial on stipulated facts was conducted before the Judge John Cooney.

Judge Cooney convicted the defendant as charged and imposed a standard range

sentence. Mr. Davis then timely appealed to this court.

A panel considered the case without hearing argument.

ANALYSIS

The appeal presents several issues related to the two suppression rulings, but we

condense the challenges into two. We first address the challenges to the apartment

detention. We then consider arguments related to the jail search.

*Apartment Detention*

Mr. Davis argues that the officer had no reason to detain him once they learned he

had been "let inside" and that there was no basis for patting him down. The first

argument is answered by the findings from the suppression hearings, while the second

contention is waived for failure to present it during the course of those two hearings.[2]

---

[2] His pursuit of these arguments on appeal is curious since no evidence was discovered during the trespass investigation. The discovery of a person's identity is not a basis for suppressing evidence uncovered following an arrest on an outstanding warrant. *State v. Rothenberger*, 73 Wn.2d 596, 440 P.2d 184 (1968). Washington excludes evidence that is directly discovered as a result of police violation of art. I, § 7. *Kennedy*, 107 Wn.2d at 9. Washington does not apply a "but for" test of causation that would require the suppression of any and all evidence discovered subsequent to an illegality. *E.g.*, *State v. Mayfield*, 192 Wn.2d 871, 874, 434 P.3d 58 (2019); *State v. Mierz*, 127 Wn.2d 460, 474-475, 901 P.2d 286 (1995); *State v. Bonds*, 98 Wn.2d 1, 10-14, 653 P.2d 1024 (1982); *State v. Vangen*, 72 Wn.2d 548, 554-555, 433 P.2d 691 (1967).

3

This court typically reviews findings entered following a CrR 3.6 hearing for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review de novo the conclusions derived from the factual findings. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).[3]

Mr. Davis argues that the police had no basis for continuing an investigation or in discovering his identity once he succeeded in entering the apartment. The record does not support that argument.[4] Washington applies the articulable suspicion standard of *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), to investigative stops implicating the protections of article I, section 7 of our state constitution. *State v. Kennedy*, 107 Wn.2d 1, 4-6, 726 P.2d 445 (1986). When an officer can articulate the basis for believing possible criminal activity is afoot, a brief detention to investigate is permissible. *Terry*, 392 U.S. at 21. The test is whether the facts known to the officer show "a substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy*, 107 Wn.2d at 6. "When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention." *Id*.

These standards were satisfied here. The officers knew that there was "a substantial possibility that criminal conduct has occurred." *Id*. Three calls reported that

---

[3] Davis also assigns error to related findings of fact, but makes no significant effort to explain whether or not sufficient evidence supports them.

[4] No finding of fact from either CrR 3.6 hearing indicates how the men entered the apartment, let alone suggests that they were permitted or authorized to be there.

strange men were trying to enter an apartment in the middle of the night. The apartment's

occupants let the police in and pointed out the unwanted presence of Mr. Davis. That

evidence supported the trial court's finding that the "officers were investigating whether

Mr. Davis had committed the crime of trespass." Clerk's Papers (CP) at 24. It was

reasonable for officers to determine the identity of the strange man in the apartment,

particularly after he gave them a false name.[5] The trial court correctly denied the motion

to suppress.

Mr. Davis also argues that he was unlawfully patted down. He waived that

argument. The failure to raise an issue in the trial court normally precludes a party from

raising the issue on appeal. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d

492 (1988). One exception to that rule is that a claim of manifest constitutional error can

be asserted for the first time on appeal, if the record is adequate to address the issue.

*State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

Mr. Davis argues that the record is that the record is sufficient to consider this

issue, but it is not. No one asked the officers why a pat down was necessary and the

---

[5] The officers also had probable cause to arrest Davis for obstructing a public servant. RCW 9A.76.020. This stands as an independent reason to affirm the suppression ruling. Even if there had been an illegal detention, the false statement provided a basis independent of the initial detention to identify and arrest Davis. A crime committed subsequent to allegedly illegal police actions is not the fruit of the illegality. *State v. Valentine*, 132 Wn.2d 1, 935 P.2d 1294 (1997); *State v. Mierz*, 127 Wn.2d 460, 901 P.2d 286 (1995).

court made no findings related to that topic. There was evidence that Mr. Davis was "agitated" and that the officers feared having to fight with him. A properly noted hearing would have provided the answers to these questions. The wallet also appears to have been seized contemporaneously with the arrest on the outstanding warrants. Again, if a hearing had been held, the court could have made findings to identify whether there was any evidence seized, let alone seized illegally.

In addition to the inadequacy of the record, a second reason exists to decline review of this argument. Mr. Davis *twice* brought CrR 3.6 motions to suppress evidence without raising the current version of this claim. The decision not to present a third theory of suppression likely was the result of conscious acknowledgement that the facts of the encounter would not justify it. The issue is waived. *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995).

For all of the reasons noted above, the challenges to the suppression rulings are without merit.

*Jail Search*

Mr. Davis challenges the strip search, claiming that it was performed improperly and without authorization, and that the statute is unconstitutional. Although these arguments do address evidence that was used at trial, they, too, are without merit.

Strip searches and body cavities searches are governed by RCW 10.79.060-170. The primary distinction is whether a body cavity (stomach, rectum, or vagina) is

6

involved.  RCW 10.79.070(3).  Body cavity searches involve touching or probing a body cavity.  RCW 10.79.070(2).  A body cavity search can only be conducted pursuant to a search warrant.  RCW 10.79.080(1).  Cavity searches must be conducted by trained health care professionals.  RCW 10.79.100(2).  A strip search involves the removal or rearrangement of clothing and the display of the genitals, buttocks, anus, female breasts, or undergarments.  RCW 10.79.070(1).

Strip searches can only occur when reasonable suspicion exists or when a person has been arrested for specified categories of offenses.  RCW 10.79.130.  Among those who may be searched is anyone who has been arrested for "an offense involving escape, burglary, or the use of a deadly weapon; or an offense involving possession of a drug or controlled substance."  RCW 10.79.130(2)(b), (c).  Strip searches shall be conducted in private locations.  RCW 10.79.100(3).

Mr. Davis first argues that the search was an improper body cavity search and was not conducted privately.  The court's factual findings, all supported by the testimony of a corrections officer, are contrary to those assertions.  The search was conducted in a bathroom that was not visible to the public or the general booking area.  The door to the room remained open for security purposes.  CP at 38.  These findings establish that the search was conducted in private in accordance with the requirements of the statute.

The baggies of methamphetamine were observed when Mr. Davis spread his buttocks.  The court expressly found, consistent with the testimony of the corrections

7

officer, that the baggies were removed without probing the rectum. CP at 38. On the basis of these findings, the trial court determined that this constituted a strip search, not a body cavity search. CP at 38.

The ruling was correct. Removing an item protruding from the anus during a strip search is not a body cavity search, even if the protruding item is touching a body cavity. *State v. Jones*, 76 Wn. App. 592, 598, 887 P.2d 461 (1995). An officer does not touch or probe the rectum when retrieving an item that touches the rectum. *Id*.

The trial court properly determined that Mr. Davis was not the subject of a body cavity search.

He next argues that the search was conducted without statutory authorization. We disagree. A strip search is authorized following an arrest for certain named offenses, including "burglary" or "an offense involving possession of a drug or controlled substance." RCW 10.79.130(2)(b), (c). Mr. Davis was arrested due to both the burglary warrant and the DOC warrant from a drug case in which he was on community supervision. CP at 38. Because the statute treats these warrants differently, we, too, will discuss each separately.

The trial court discounted the burglary warrant as a basis for the search, stating that the facts underlying the warrant were not in the record. The court erred in doing so. Nothing in the statute suggests factual inquiry into the nature of the offense is required. Instead, the statute lists categories of offenses for which a strip search is authorized. The

statute authorizes a strip search when a burglary suspect is booked into the jail. The search of Mr. Davis was authorized by the statute.

Anticipating this result, Mr. Davis argues that the categorical approach taken by the legislature in RCW 10.79.130(2), which dictates that reasonable suspicion for a strip search exists when a person is arrested for specific offenses, is unconstitutional. He contends that the individualized suspicion must always be present to satisfy art. I, § 7 of the Washington Constitution.

No published opinion from this court appears to have addressed this argument. *Jones* is the only case that has even addressed a search expressly authorized under subsection 130(2). 76 Wn. App. at 599. In all other instances, our court has addressed searches authorized under subsection 130(1) or has not specified the subsection. *See, e.g., State v. Barron*, 170 Wn. App. 742, 752-754, 285 P.3d 231 (2012) (arrest for assault); *State v. Harris*, 66 Wn. App. 636, 643, 833 P.2d 402 (1992) (arrest on unspecified warrants).

Both parties properly recognize *State v. Audley*, 77 Wn. App. 897, 902, 894 P.2d 1359 (1995), as the most authoritative discussion of the strip search statute. There, the defendant was observed delivering cocaine he had been storing down the front of his pants. *Id*. at 900. Division One of this court upheld the constitutionality of the statute under art. I, § 7 and the Fourteenth Amendment, deciding that the state and federal constitutions provided the same protections in this context. 77 Wn. App. at 903-905.

9

Consistent with federal authority, *Audley* concluded that individualized suspicion was necessary to perform a strip search at a jail. *Id.* The court recognized that 130(2) deemed reasonable suspicion "automatically present" in the circumstances listed. *Id.* at 906.

Recognizing that federal courts have since retreated from this standard, Davis argues that this court should continue with the individualized suspicion standard and use it to declare 130(2) unconstitutional.[6] *Audley* expressly recognized that the categories of 130(2) themselves provided individualized suspicion. 77 Wn. App. at 902, 908. It would be a significant rewriting of *Audley* to now rule that it was internally inconsistent. He has presented no compelling reason for doing so.[7]

Although *Audley* answers one of the challenges presented here, it does not address the validity of the search based on the DOC warrant relied upon by the trial court. RCW 10.79.120 expressly states that the protections of the strip search statute do not extend to individuals incarcerated "by order of a court" or those "held for post-conviction

---

[6] Federal courts now permit strip searches of those destined for the general jail or prison population without requiring individualized suspicion. *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 339-340, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012); *Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010).

[7] Before abandoning precedent, a court must find that an established rule is both incorrect and harmful. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 466 P.2d 508 (1970). Mr. Davis has not made that effort here. The statute protects both individual rights and the rights of those working and residing in correctional facilities. *Audley*, 77 Wn. App. at 908-909. There has been no showing that *Audley* wrongly construed either the statute or the demands of art. I, § 7, or that its rule is harmful. We have no basis for abandoning it.

incarceration." The DOC warrant involved a post-conviction matter, taking that arrest outside of the directives of RCW 10.79.130.[8]

Mr. Davis also argues that no one can be strip searched without an arrest warrant, a contention that goes to the heart of the DOC warrant issue. However, his analysis fails because it focuses on the wrong population. A person detained post-conviction is not situated the same as every other citizen, nor even situated the same as an arrestee. Davis primarily relies upon *Audley*, a case dealing with arrestees. It stands for the proposition that RCW 10.79.130's reasonable suspicion standard for strip searches of arrestees satisfies art. I, § 7. It does not stand for the proposition that incarcerated prisoners can only be strip searched when reasonable suspicion exists.

A complete *Gunwall*[9] analysis no longer is needed when determining whether art. I, § 7 provides greater protection than the Fourth Amendment. *State v. Mayfield*, 192 Wn.2d 871, 879, 434 P.3d 58 (2019). Instead, the parties (and reviewing court) may simply consider the merits of the argument for extra protection. *Id.* In that regard, *Audley* does not aid Mr. Davis. Not only does it not address his situation, it also holds that the state and federal constitutions set forth the same protections for strip searches. Now that the United States Supreme Court has confirmed that individualized suspicion is

---

[8] *Audley* succinctly summarized the matter: RCW 10.79.130, *et seq.*, applies only to arrestees and does not apply to those committed to jail (presumably to serve sentences) by the court. *Audley,* 77 Wn. App. at 901 n.1.

[9] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

11

not needed to search prisoners, the *Audley* standard undercuts Mr. Davis's argument. *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. 318, 339-340, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012).

More critically, the pre-*Gunwall* case law does not support his argument. Significant here is *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981). There the court upheld a Walla Walla Superior Court policy of having all penitentiary prisoners subjected to strip and body cavity searches before appearing in superior court for any proceedings. *Id*. at 391-397. This is a significant indication that Washington, historically, has not provided extra protection to prisoners in this arena. Similarly, commentators also recognize that Washington prisoner searches are governed by statute and regulation. Charles W. Johnson & Debra L. Stephens, *Survey of Washington Search and Seizure Law: 2019 Update*, 42 Seattle U. L. Rev. 1277, 1447 (2019).

The need of correctional institutions to protect against the introduction of contraband is significant. This case provides a clear example. If Mr. Davis had not been carefully searched, two packages of methamphetamine would have made it into the jail. In the absence of any indication that Washington grants prisoners greater protection against strip searches than the federal constitution, we decline to do so here.

No. 36561-1-III
*State v. Davis*

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Melnick, J.